2005 VT 70

# Concord General Mutual Insurance Company v. Leo Madore, Linda Madore On Behalf of T.M. (A Minor) and Tracy Dion On Behalf of T.S. (A Minor)

[882 A.2d 1152]

No. 04-291

Present: Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed July 1, 2005
Motion for Reargument Denied August 3, 2005

*Richard J. Holmes* of *Robert A. Mello & Associates, PLC*, South Burlington, for Plaintiff-Appellee.

*Thomas C. Bixby* of *McCarty Law Offices, P.C.*, Brattleboro, for Defendants-Appellants Dion and T.S. (A Minor).

¶ 1. **Johnson, J.** Plaintiff Concord General Mutual Insurance Company brings this declaratory judgment action claiming that it does not owe its insureds a duty to defend or indemnify them in an underlying tort suit arising from minor-on-minor sexual molestation. Plaintiff

moved for and was granted judgment against all parties to the underlying tort suit on grounds that the homeowners' policy at issue expressly excluded from coverage personal liability arising out of the sexual molestation of any person, whether intentional or unintentional. On appeal, defendants argue that the court impermissibly resolved a genuine issue of material fact on summary judgment when it determined that the molestation exclusion applied to the facts of this case. Specifically, defendants argue that the exclusion applies only to intentional acts of sexual molestation and, therefore, the court also erred in failing to permit discovery on the question of whether the minor perpetrator in this case was capable of forming the requisite intent. We affirm because the court properly interpreted the dispositive policy exclusion at issue, and such interpretation presented a question of law that was within the court's power to resolve on summary judgment.

¶ 2. In September 2003, defendant Tracy Dion filed a complaint in superior court on behalf of herself and her minor son T.S. seeking damages from defendants Leo Madore, Linda Madore, and their minor son T.M. for injuries sustained as a result of T.M.'s alleged sexual molestation of T.S. Paragraph six of the underlying complaint states, "T[.]S[.] was *sexually molested* by T[.]M[.] from the Summer of 1998 through the Fall of 2001." (Emphasis added.) All ten counts of the underlying complaint "repeat and reallege" the. sexual molestation allegation contained in paragraph six. In January 2004, Dion amended each count of the complaint adding the allegation that T.M.'s conduct also "constituted a violation of Vermont statutes lewd or lascivious conduct with a child 13 V.S.A. §§ 2601, 2602, and 2631."

¶ 3. During the period covered by the allegations in the underlying complaint, the Madore defendants were the insureds on a homeowners' insurance policy issued by plaintiff. The policy provided personal liability coverage for suits brought against an insured for damages because of bodily injury. The policy required plaintiff to supply insureds a defense against lawsuits seeking damages for occurrences that fall within the policy coverage. The policy coverage contains, among others, an exclusion in subsection (a) for bodily injury resulting from acts which are "expected or intended by one or more 'insureds'"; an exclusion in subsection (b) for bodily injury that "aris[es] out of or in connection with a 'business' engaged in by an 'insured'" including any act or omission "regardless of its nature or circumstance, involving a service or duty rendered"; an exclusion in subsection (g) for bodily injury "[a]rising out of ... [t]he ownership,

maintenance, use, loading, or unloading of an excluded watercraft"; an exclusion in subsection (i) for bodily injury "[c]aused directly or indirectly by war"; an exclusion in subsection (j) for bodily injury "[w]hich arises out of the transmission of a communicable disease by an 'insured'"and; an exclusion in subsection (1) for bodily injury "[a]rising out of sexual molestation of any person."

¶ 4. In response to a dispute that arose between the parties about whether the Madores' homeowners insurance policy provided coverage for Dion's claim, plaintiff filed this declaratory judgment action naming the Madores, Tracy Dion, and T.S. as defendants. In its complaint, plaintiff alleged five independent reasons that it felt justified a denial of coverage, including the intentional acts exclusion and the sexual molestation exclusion cited above.

¶ 5. Plaintiff subsequently moved for judgment on the pleadings under V.R.C.P. 12(c). Of the grounds alleged in its complaint, plaintiff's motion relied solely on the sexual molestation exclusion. Plaintiff argued that the exclusion applied to bar coverage for defendant Dion's claims in the underlying tort suit, all of which derived from the allegation that the insureds' son had sexually molested T.S.

¶ 6. Defendants responded by filing a motion for summary judgment pursuant to V.R.C.P. 56. In their statement of facts, defendants note that the policy does not define the term "sexual molestation" as used in the exclusion. Defendants argued that they were entitled to judgment as a matter of law because, in their view, the undefined term includes only sexual molestation that was intentional. Defendants asserted that the minor perpetrator in question should be presumed incapable of forming the requisite intent as a matter of law. Defendants argued, therefore, that the policy exclusion at issue would not bar coverage for the underlying complaint because it alleges unintentional sexual molestation for which coverage is not specifically excluded. The parties then traded pleadings in opposition to each other's respective motions.

¶ 7. The court granted plaintiff's motion for judgment on the pleadings and denied defendants' motion for summary judgment. The court identified the "pivotal issue" as "whether there is any possibility that Plaintiff insurer might be obligated to indemnify Defendants Madore and T.M. on any of the claims asserted in the underlying suit." Consistent with our precedent, the court analyzed the issue by comparing the allegations in defendant Dion's tort complaint to the terms of coverage in the policy. See *Hardwick Recycling & Salvage, Inc. v. Acadia Ins. Co.*, 2004 VT 124, ¶ 15, 177 Vt. 421, 869 A.2d 82 (describing mode of analysis in insurance coverage disputes). The court examined

both the underlying tort complaint and the Madores' insurance policy that had been "incorporated into the pleadings" by the parties. After quoting from the sexual molestation exclusion that plaintiff's motion relied on, and the intentional acts exclusion, the court concluded that the molestation exclusion is "clear, unambiguous and applicable here." The court specifically rejected defendants' argument that, based on our decision in *Northern Security Insurance. Co. v. Perron*, 172 Vt. 204, 777 A.2d 151 (2001), a sexual molestation exclusion cannot bar coverage when the alleged molester is a minor. The court also noted that, under defendants' interpretation, the specific sexual molestation exclusion would be completely redundant because intentional acts of sexual molestation would be excluded by the general intentional acts exclusion. Based on its conclusion that the plain meaning of the sexual molestation exclusion encompasses all acts of sexual molestation regardless of whether the alleged perpetrator was capable of forming legal intent, the court denied defendants' motion for summary judgment, noting that the question of intent was immaterial. We find no error in any of these conclusions.

¶ 8. On appeal, defendants assert that the superior court erred by granting plaintiff's motion for summary judgment because a genuine issue of material fact exists as to whether the insurance policy excluded coverage for minor-on-minor sexual molestation. Defendants raise this argument even though the trial court's order purports to grant plaintiff judgment on the pleadings, and not summary judgment. Defendants assert that by attaching the underlying complaint to its motion for judgment on the pleadings, plaintiff presented matters outside the pleadings, which the court then considered, thus converting the motion to one for summary judgment. See V.R.C.P. 12(c) (requiring a motion for judgment on the pleadings to be treated as motion for summary judgment in accordance with V.R.C.P. 56 whenever matters outside the pleadings are presented to and not excluded by the court). As noted, the court considered the underlying complaint as "incorporated" by the parties' pleadings. We need not resolve this dispute over the motion's proper classification because this case presents only a question of law, which we review under the de novo standard. Thus, even if we assume that the motion should have been reviewed under the summary judgment standard, the standard of review on appeal as to the ultimate question of policy interpretation is the same. See V.R.C.P. 61 (outlining the harmless error standard and instructing the court to disregard any error or defect in the proceeding

that does not affect the "substantial rights of the parties"). Moreover, applying that standard we reach the same result as the trial court.

¶ 9. The trial court correctly pointed out that this case turns on the interpretation of the sexual molestation policy exclusion. Notwithstanding defendants' argument to the contrary, "[c]onstruction of the language of insurance contracts is a question of law, not of fact." *Fireman's Fund Ins. Co. v. CNA Ins. Co.*, 2004 VT 93, ¶ 8, 177 Vt. 215, 862 A.2d 251. Our review of trial court rulings on questions of law presented by summary judgment motions is plenary, and nondeferential. *Hardwick Recycling*, 2004 VT 124, ¶ 14. In making our own inquiry into the legal effect of and interrelationship between the insurance contract terms, we read the disputed terms according to their plain and popular meaning, resolving ambiguity, if any, in favor of the insured. *Fireman's Fund Ins. Co.*, 2004 VT 93, ¶ 9. Nonetheless, we will not deny the insurer the benefit of unambiguous terms inserted into the contract for its benefit. *Id.*

¶ 10. The trial court concluded, and we agree, that the sexual molestation exclusion is both unambiguous and applicable to the underlying claim. The policy does not, however, contain a definition for the term "sexual molestation." Accordingly, we may take judicial notice of its dictionary definition to determine its popular meaning. *Hardwick Recycling*, 2004 VT 124, ¶ 26. The term "sexual" is defined primarily as being "[o]f relating to, involving, or characteristic of sex, sexuality, the sexes, or the sex organs and their functions." American Heritage Dictionary 1249 (3d ed. 1997). "Sexual" is also defined as "[i]mplying or symbolizing erotic desires or activity." *Id.* The dictionary also indicates that to "molest" is "[t]o disturb, interfere with, or annoy" or alternatively "[t]o subject to unwanted or improper sexual activity." *Id.* at 879.

¶ 11. The concept of legal intent is beyond the plain meaning that we derive from the foregoing definitions. The verb molest, as a transitive verb, focuses on the effect the action has on its object, the victim, without reference to the intent of the perpetrator. Moreover, reading the underlying complaint in light of the definitions above leaves little doubt that the allegations it contains fall within the sexual molestation exclusion contained in the insurance policy. Aside from the direct use of the term "sexual molestation" in paragraph six that is then "realleged" in every count of the underlying complaint, the underlying complaint also states that "[T.M.] intended to commit unpermitted

harmful and offensive sexual contact upon [T.S.]"* In paragraph twenty, the underlying complaint states that T.M. forced "harmful and offensive unwanted sexual contact" upon T.S. Paragraph seventy-two alleges that the Madore defendants permitted T.M. "to be in a position to molest children." This comparison belies any claim that the allegations in the complaint do not fall within the plain and popular meaning of the term "sexual molestation" as it is used in the policy exclusion at issue.

¶ 12. Defendants also err when they suggest that the sexual molestation exclusion "falls under the intentional act provisions of the policy." This claim is unsupported by the policy language and structure to which we must give effect. See *Waters v. Concord Group Ins. Cos.*, 169 Vt. 534, 536, 725 A.2d 923, 926 (1999) (mem.) ("Proper insurance contract interpretation requires that the policy provisions be read together and viewed as an integrated whole."). In fact, the sexual molestation and the intentional act exclusions are but two of a group of separately numbered, independent exclusions all of which fall under the general heading for exclusions to the "personal liability" and "medical payment to others" coverage. The intentional act exclusion is found at § II(1)(a), and the sexual molestation exclusion is found at § II(1)(k)(1). As noted above, there are a number of other exclusions interposed between the two in question, and some pertain to occurrences that could not be classified strictly as intentional acts of the insured. These include the provision at § II(1)(i) for bodily injuries caused directly or indirectly by the "[d]ischarge of a nuclear weapon ... even if accidental." Sexual molestation is not, therefore, an enumerated example of the types of intentional acts excluded by the intentional act exclusion — it is an exclusion unto itself. In light of the fact that the policy clearly establishes separate exclusions for intentional acts and sexual molestation, an interpretation of the molestation language that writes an intent element into it would, as the trial court noted, render it redundant. We cannot adopt such an interpretation. *Id.* ("The court is ... bound to enforce the contract as written and not to rewrite it on behalf of one or both of the parties.").

¶ 13. Having concluded that the sexual molestation exclusion makes no distinction between acts of molestation which are done by a perpe-

---

* In arguing that the sexual molestation exclusion applies only to intentional sexual molestation, and that the minor T.M. may not have been capable of forming the requisite intent, defendant Dion has taken a position that would directly undermine some of the allegations contained in the underlying complaint.

trator capable of forming legal intent, and acts which are done by an individual who may be incapable of forming intent, we find no application for *Northern Security Insurance Co. v. Perron*. In *Perron*, we considered whether the inferred-intent rule we apply to cases involving sexual abuse perpetrated on a minor by an adult should also apply to minor-on-minor sexual abuse cases. 172 Vt. at 214-15, 777 A.2d at 158-60. We did so in the context of an insurance coverage dispute concerning the application of a general intentional act exclusion, and not, as is the case here, a specific sexual molestation exclusion existing independently from an intentional act provision. Accordingly, *Perron* is not pertinent to our analysis here.

¶ 14. Also irrelevant is defendant Dion's amendment of the underlying complaint to include an allegation that T.M.'s actions toward T.S. rose to the level of lewd and lascivious conduct with a child as proscribed by Vermont's criminal statutes. Simply describing the underlying conduct with a specific legal term does not change the general character of that conduct. As noted above, the conduct alleged falls within the plain meaning of the term sexual molestation; whether it may also amount to the level of criminal conduct is beside the point.

¶ 15. In light of our conclusion that T.M.'s capacity to form legal intent is immaterial to the application of the sexual molestation exclusion, defendants' claim that the court erred in denying them discovery related to the question of T.M.'s intent is moot.

*Affirmed.*