2006 VT 48

# Clifton Blake v. Nationwide Insurance Company

[904 A.2d 1071]

No. 05-176

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed May 26, 2006

*Thomas C. Bixby* of *McCarty Law Offices, P.C.*, Brattleboro, for Plaintiff-Appellant.

*John A. Serafino* of *Ryan, Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellee.

¶ 1. **Dooley, J.** Plaintiff Clifton Blake appeals the superior court's grant of summary judgment for defendant Nationwide Insurance Company ("Nationwide"). Plaintiff argues that Nationwide had a duty to defend the insured's employee, Clifford Riddle, in the underlying negligence action and that Nationwide's failure to defend should estop it from asserting that injuries caused by Riddle's negligence were not covered by the policy. Plaintiff also claims that the superior court: (1) erroneously granted Nationwide summary judgment based on the finding that plaintiff's injuries occurred in the course of his employment; (2) made procedural errors in awarding summary judgment; (3) erroneously refused to compel Nationwide to produce its file in discovery; and (4) erroneously dismissed his count alleging that Nationwide acted in bad faith. We hold that defendant had no duty to defend and, therefore, is not estopped from denying coverage under the employment exclusion. We also hold that the court properly granted summary judgment, denied the motion to compel discovery, and dismissed the bad faith claim. We affirm.

¶ 2. Plaintiff and Clifford Riddle, both Jamaican migrant farm workers, were involved in a motor vehicle accident on July 17, 1997. Riddle was driving a truck owned by their employer, Donald Harlow, and plaintiff was a passenger in the truck when it struck a tree.[1] Plaintiff sustained severe injuries as a result. The truck was insured under a policy issued to Donald and Madeline Harlow by defendant

---

[1] Clifford Riddle and Donald Harlow are not involved in this appeal.

Nationwide. The policy contains specific exclusions for "bodily injury to others for which any insured may be held liable under a workmen's compensation, unemployment compensation, disability benefits, or similar law" and "bodily injury to an employee of any insured, while the employee is engaged in activities of employment." As a result of his injuries, plaintiff received workers' compensation benefits from the Harlows' workers' compensation insurer.

¶ 3. Plaintiff sought legal counsel to explore other ways to recover for his injuries, and on September 16, 1998, plaintiff's counsel sent a letter to the Harlows informing them that his office would be representing plaintiff in plaintiff's claim regarding the "work-related automobile accident," and that they should forward the letter to both their workers' compensation and automobile insurance carriers. After a follow-up letter threatening suit, a Nationwide claims agent responded on April 27, 1999, stating that plaintiff's injury was not a covered loss under the auto insurance policy Nationwide issued to the Harlows because plaintiff was covered by workers' compensation insurance.

¶ 4. On December 2, 1999, plaintiff brought suit against the Harlows and Clifford Riddle to recover for injuries sustained in the accident. Apparently the Harlows had initially sought a defense, but Nationwide denied their claim under one of the exclusions listed above.[2] In any event, plaintiff dismissed the claims against the Harlows and when Riddle did not appear, obtained a default judgment and eventually a damage award against him in the amount of $3,887,193.72. Riddle never sought a defense from Nationwide, and Nationwide provided no defense to him. Thus, Nationwide was not involved in the underlying litigation.

¶ 5. After securing the default judgment and before the assessment of damages, plaintiff notified Nationwide that it had breached its obligation to defend Riddle. Nationwide responded that the claim had been denied prior to litigation because "this policy does not cover bodily injury to an employee of any insured, while the employee is engaged in activities of employment." Following the damage assessment, plaintiff notified Nationwide that it was obligated to pay the judgment and that he would seek punitive damages if Nationwide

---

[2] The record in this case does not contain any detail of the interaction between Nationwide and the Harlows or the circumstances under which the Harlows were dismissed from the underlying litigation.

failed to pay. Apparently, Nationwide did not respond to this letter, and this suit ensued on March 15, 2003.

¶ 6. Plaintiff's complaint alleged that Nationwide's policy covered Clifford Riddle as a permissive user of the Harlows' automobile at the time of the accident. It alleged the underlying litigation and the default judgment of $3,887,193.72 and stated that "despite having ample knowledge of the claim [Nationwide] has failed to defend and/or make any payments on the judgment." It alleged that Nationwide was obligated to pay the judgment and had acted in bad faith in not doing so. It sought the amount of the underlying judgment plus compensatory damages for Nationwide's actions in bad faith, punitive damages, and attorneys' fees.

¶ 7. Nationwide moved to dismiss the action for failure to state a claim because there was no privity of contract between plaintiff and Nationwide and because coverage was excluded as Riddle was acting in the course of his employment when the accident occurred. Plaintiff countered with a motion to enforce the underlying judgment, arguing that Nationwide's failure to defend Riddle in the underlying action estopped it from defending in the instant action. In support of this motion, plaintiff attached correspondence between plaintiff's counsel and claims adjusters for Nationwide.

¶ 8. It became clear from these initial filings that plaintiff was pursuing two theories of Nationwide's liability. The first and primary theory was that Nationwide was obligated to pay the underlying judgment, whether or not there was coverage under the policy, because it breached its duty to defend Riddle in the underlying action without seeking a declaratory judgment on the issue of coverage. The second theory was that there was coverage under the policy because the exclusions on which Nationwide relied did not apply. The superior court denied the motion to enforce under the first theory, relying on the correspondence attached to the plaintiff's motion. In essence, the court granted Nationwide's motion to dismiss the first theory. The court denied the motions on the second theory, ruling that it could not be decided on a motion to dismiss without factual support.

¶ 9. We note that the motions the court decided were plaintiff's attempts at preemptive strikes to obtain early decisions on the merits without trial and without the factual development necessary for a trial or even a motion for summary judgment. The court could have decided that all of the claims in the motions were premature, as it did with respect to plaintiff's second theory, but it decided to rule against

plaintiff on the merits of his main claim. Plaintiff could not complain about this disposition because he brought it on himself by filing the motion and supporting letters. Nationwide might have claimed that the motion for enforcement was really one for summary judgment because of the attached factual material, see *Lueders v. Lueders*, 152 Vt. 171, 172, 566 A.2d 404, 405 (1989), but instead took advantage of plaintiff's motion for a successful preemptive strike of its own. Whatever procedural irregularities are behind the court's decision have been waived.

¶ 10. In ruling on the first theory, the superior court concluded that even if plaintiff's estoppel theory was valid, it would not apply in this case because Nationwide had no reason to believe there was a dispute over coverage:

> From Blake's own submissions, it appears that Nationwide informed Blake of its position that his injuries were not covered because he was the insured's employee — a plausible position, certainly — no later than April 1999. Yet, it does not appear that there was any further communication between Blake and Nationwide until April 2001, *after* a default judgment against Riddle had been entered. Moreover, even then, Blake provided no factual or legal explanation of why he believed the exclusion did not apply. Estoppel is an equitable doctrine, and when an insurer states a non-frivolous position regarding non-coverage, it would not be equitable to invoke estoppel because it failed to pursue a declaratory judgment, when the party disputing non-coverage did nothing to let the insurer know that a viable dispute existed and a declaratory judgment action was needed.

The court added that "we certainly do not want to encourage insurers to seek a declaratory judgment every time they deny coverage, even if there is no viable dispute."

¶ 11. Nationwide then moved for summary judgment on the second theory, asserting that the workers' compensation and employment-related policy exclusions to its coverage applied such that plaintiff's injuries were not covered by the Harlows' policy. The superior court initially denied the motion but reconsidered when Nationwide filed Donald Harlow's affidavit, which stated that plaintiff was injured in the course of his employment with the Harlows. Nationwide argued that Harlow's affidavit established that plaintiff was working at the time of the accident, and thus plaintiff's injuries fell under the

employment-related exclusion to the policy. Plaintiff did not produce any evidence to contest the affidavit. The superior court granted Nationwide's motion for summary judgment on April 22, 2005, finding there was no genuine issue as to the fact that plaintiff's injuries occurred in the scope of employment. Plaintiff appeals from the judgment and the denial of the motion to enforce.[3]

¶ 12. The first issue is whether Nationwide had a duty to defend Riddle in the underlying action. Plaintiff relies upon our general description of the duty to defend:

> We have often explained that an insurer's duty to defend is broader than its duty to indemnify.... Generally, the insurer's duty to defend is determined by comparing the allegations in the complaint of the underlying suit to the terms of coverage in the policy.... If any claims are potentially covered by the policy, the insurer has a duty to defend.

*City of Burlington v. Nat'l Union Fire Ins. Co.*, 163 Vt. 124, 127, 655 A.2d 719, 721 (1994) (citations omitted). Plaintiff points out that the complaint fell within the coverage of the policy and any claim that exclusions applied was arguable until finally settled by the court in its summary judgment decision. Further, he argues that Nationwide could have brought a declaratory judgment action to resolve any coverage issue, which, he posits, was exactly what we required in *Smith v.*

---

[3] Nationwide argues that the scope of this appeal should be limited to issues raised in the summary judgment decision of April 22, 2005, because V.R.A.P. 3(d) requires an appellant to "designate the judgment, order, or part thereof appealed from," and plaintiff designated only the summary judgment entry and not earlier decisions or the final judgment. We have stated that "[c]ourts liberally construe the requirements of Rule 3." *In re Shantee Point, Inc.*, 174 Vt. 248, 259, 811 A.2d 1243, 1253 (2002) (stating that so long as notice of the appeal is timely filed, an error in compliance with Rule 3 affects the validity of the appeal only if it prejudices another party). The United States Supreme Court, discussing Federal Rule of Appellate Procedure 3(c), which has nearly identical language as the Vermont rule, commented that "imperfections in noticing an appeal should not be fatal where no genuine doubt exists about who is appealing, from what judgment, to which appellate court." *Becker v. Montgomery*, 532 U.S. 757, 767 (2001). Here, Nationwide is not prejudiced by allowing plaintiff to appeal from the final judgment and the earlier decisions since it was given sufficient notice of the issues on appeal and had the opportunity to fully brief them. Moreover, it is clear that plaintiff intended to appeal from all the decisions including the final judgment, and should not be penalized for a technical mistake where no prejudice resulted. Thus, we reject Nationwide's argument.

*Nationwide Mutual Insurance Co.*, 2003 VT 61, 175 Vt. 355, 830 A.2d 108.

¶ 13. Although in many cases the presence of a duty to defend can be determined by comparing the coverage provisions of the policy with the allegations in the complaint, this is not such a case because the relevant policy exclusions involve factual questions not covered in the complaint, namely, whether the accident occurred in the scope of employment. The insurer is entitled to independently examine whether the policy exclusions apply and deny coverage under an applicable exclusion. In doing so, it bears the risk that its coverage decision is wrong and it will be liable for a judgment in a case in which it did not participate. See *Cincinnati Ins. Co. v. Vance*, 730 S.W.2d 521, 522 (Ky. 1987) (holding that insurer may choose not to defend putative insured at its own peril, but may be liable for judgment if court determines there was policy coverage). Its decision not to defend, however, does not expose it to liability if its coverage determination was correct. See *Serecky v. Nat'l Grange Mut. Ins.*, 2004 VT 63, ¶ 13, 177 Vt. 58, 857 A.2d 775 (holding that insurers who justifiably denied coverage did not waive right to dispute coverage by failure to defend or participate in underlying action).

¶ 14. Plaintiff argues that it is debatable whether the policy exclusion for injury to an employee "while ... engaged in activities of employment" applies. We do not find this argument supported by the limited record before us. Nationwide consistently denied coverage, first in an August 15, 1997, letter to the Harlows, and thereafter when the Harlows were sued by plaintiff. Neither the Harlows nor Riddle contested this denial. Plaintiff was receiving workers' compensation benefits, which strongly suggests the injury was work-related. Indeed, even plaintiff's counsel, in a letter to the Harlows predating the complaint, referred to the incident as a "work-related automobile accident." In response to plaintiff's claim that Nationwide breached its duty to defend, a Nationwide claims agent reiterated its position and invited plaintiff's counsel to submit authority to the contrary. Plaintiff never responded to that invitation. Plaintiff's silence is telling because the applicability of the exclusion is based upon the nature of the injured party's conduct at the time of the accident.

¶ 15. Nor do we agree with plaintiff that Nationwide had a duty to seek a declaratory judgment on coverage. Plaintiff relies for this argument on *Smith v. Nationwide Mutual Insurance Co.*, a case in

which the insurer commenced a defense but discontinued it under a cooperation clause because the insured would not allow counsel selected by insurer to appear for him in the underlying litigation. 2003 VT 61. We held that the insurer failed to demonstrate that the insured breached his contractual duty to assist in the defense and also failed to demonstrate prejudice from the insured's conduct. *Id.* ¶ 28. We also observed that one option the insurer could have used to address its disagreement with insured was to file a declaratory judgment action to determine its obligations under the circumstances. *Id.* ¶ 18. *Smith* did not hold that an insurer must file a declaratory judgment in all noncooperation situations; the declaratory judgment was one of a number of options. See *id.* (discussing "several viable options" available to Nationwide under the circumstances, including intervention and settlement).

¶ 16. This case involves the insurer's duty to defend and not the insured's duty to cooperate. If a declaratory judgment action were required in this case, it would be required in every case in which an insurer denied coverage, irrespective of whether the grounds were contested or even contestable. The litigation from such a rule would be significant, and virtually all of it would be unnecessary. Again, we reiterate that an insurer who refuses to defend runs the risk that it will be exposed to a default or negotiated judgment much larger than if it vigorously defended in situations where its coverage decision is found to be erroneous. Because of this risk, "preemptive suits to determine coverage obligations have become a common approach of insurers in Vermont." *Id.* ¶ 24. We see no need to turn the strong incentive to bring such an action into a mandate in all cases of denial of coverage. See *Vance*, 730 S.W.2d at 523 ("[W]e disagree with the proposition that the allegations of a complaint against a putative insured compel a defense even where no coverage exists, or that an insurance company that *rightfully* elects to deny coverage and provide no defense is thereafter estopped from litigating the coverage issue.").

¶ 17. For the above reasons, we conclude that Nationwide had no duty to defend Riddle in the underlying action. Because of this conclusion we do not reach two other issues raised by the parties. We do not reach Nationwide's argument that plaintiff lacks standing to bring this action, particularly where neither the Harlows nor Riddle

sought a defense for Riddle either explicitly or impliedly.[4] We also do not reach plaintiff's primary argument that if Nationwide breached its obligation to defend, it is estopped from relying upon the coverage exclusions and must pay the default judgment.[5]

---

[4] Although the Harlows may have sought a defense for themselves at one time in the underlying litigation, there is no indication that they contested Nationwide's refusal to provide one.

Many of the cases plaintiff relies on to support his estoppel argument are inapplicable because they involve disputes where the insured brought suit against the insurer for failure to defend, and thus standing was not at issue. E.g., *Amato v. Mercury Cas. Co.*, 61 Cal. Rptr. 2d 909 (Ct. App. 1997) (addressing action by insured against his automobile insurer where insurer refused to defend and default judgment was entered against insured). Plaintiff does not explain how he, a stranger to the insurance policy, may assert estoppel against the insurer for failing to defend Riddle. See *Farm Bureau Mut. Auto. Ins. Co. v. Houle*, 118 Vt. 154, 161, 102 A.2d 326, 330 (1954) ("[Defendant] was not one of the parties to the contract of insurance so cannot invoke an estoppel against the insurer."). The cases plaintiff cites where a third party brought a complaint against an insurer for breach of its duty to defend the insured are equally inapplicable because those cases involve instances where there was at least a viable dispute over coverage. E.g., *Lozada v. Phoenix Ins. Co.*, 237 F. Supp. 2d 664, 671 (M.D.N.C. 2003) (finding information provided to insurer prior to filing of lawsuit raised facts that, if proven, would bring plaintiff's claim within coverage of the policy).

We also note a split in the case law over whether the insured must seek a defense to invoke the duty to defend. Compare *Cincinnati Cos. v. W. Am. Ins. Co.*, 701 N.E.2d 499, 503-04 (Ill. 1998) (holding duty to defend arises when insurer has notice of claim and does not require any indication that insured seeks a defense), and *Home Ins. Co. v. Nat'l Union Fire Ins. of Pittsburgh*, 658 N.W.2d 522, 532 (Minn. 2003) (stating duty to defend arises when insured gives insurer notice of lawsuit and "the opportunity to defend"), with *Unigard Ins. Co. v. Leven*, 983 P.2d 1155, 1160 (Wash. Ct. App. 1999) (explaining for duty to defend to arise, insured must ask insurer for defense). There is no indication in this case that Riddle asked for a defense or gave notice of the claim to Nationwide.

[5] While some states have adopted the rule that equitable estoppel bars an insurer from later arguing questions of coverage where the insurer failed to defend the insured or seek a declaration regarding coverage in the underlying lawsuit, see, e.g., *Joslyn Mfg. Co. v. Liberty Mut. Ins. Co.*, 23 F.3d 1212, 1214 (7th Cir. 1994) ("By violating its duty to defend, under Illinois law the insurer is estopped to deny policy coverage in a subsequent lawsuit by the insured or the insured's assignee.") (internal quotations omitted), other states have refused to adopt such a rule, see, e.g., *Elliott v. Hanover Ins. Co.*, 711 A.2d 1310, 1313 (Me. 1998) ("An insurer that breaches its duty to defend . . . is not estopped from asserting noncoverage as a defense in a subsequent action brought by the insured or the insured's assignee."); *Vance*, 730 S.W.2d at 524 ("[An insurer's] decision to deny coverage and the duty to defend . . . does not cause an estoppel."). We do not reach this issue because of our conclusion that Nationwide had no duty to defend.

¶ 18. This brings us to plaintiff's second theory that there is coverage for plaintiff's injuries from the accident under Nationwide's policy. On this theory, plaintiff argues that the court should not have granted summary judgment against him because "there are several genuine issues of material facts in dispute" and because the court committed procedural errors in ruling on the motion.

¶ 19. The superior court ruled that plaintiff could bring this direct action against Nationwide to establish coverage if he fit within 8 V.S.A. § 4203(3). That section provides that if the insured is insolvent or bankrupt, the injured party may bring a direct action against the insurer.[6] See *id.* As a result, plaintiff alleged that Riddle was insolvent. Although Nationwide contested the application of the statute, its main defense was that there was no coverage because of the applicability of the two exclusions set forth above. See *supra,* ¶ 2. Nationwide eventually filed an affidavit of Donald Harlow that stated the accident occurred while plaintiff and Riddle were transporting berries and cardboard cartons from the farm fields to the sugarhouse and, therefore, "during the course of and in the scope of their employment." The court relied upon the affidavit in granting summary judgment for Nationwide based on the exclusion for injuries occurring "while the employee is engaged in activities of employment":

> The claim that the accident occurred within the scope of employment was asserted via the fact that worker's compensation benefits had been paid. At this time, however, the Court has available an affidavit which shows that this issue cannot be in dispute. Plaintiff has not provided the Court with any evidence to dispute the information in Mr. Harlow's affidavit other than to argue that the worker's compensation benefits were paid without requirement of a formal claim.

> Therefore, the Court finds that the Nationwide policy's exclusion of claims made by employees who were injured while acting within the scope of their employment applies to this

---

[6] Plaintiff raises the issue that the superior court should have found Riddle insolvent as a matter of law and ruled that § 4203(3) authorizes this direct action by the injured party against the insurer. In view of our disposition, we do not reach this issue.

case, that there is no genuine issue as to this material fact, and that Defendant is entitled to judgment as a matter of law.

¶ 20. When reviewing a trial court's grant of summary judgment, we apply the same standard as the trial court. *Serecky*, 2004 VT 63, ¶ 12. We will affirm summary judgment if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; V.R.C.P. 56(c). Plaintiff argues that this standard was not met because "there were issues regarding maintenance of the vehicle and whether or not alcohol was a factor in the collision." We fail to see how these issues would undermine the court's conclusion that the accident occurred while plaintiff and Riddle were "engaged in activities of employment." In any event, to the extent these issues were raised by plaintiff, they were based upon "mere allegations." See V.R.C.P. 56(e); *Alpstetten Ass'n, Inc. v. Kelly*, 137 Vt. 508, 514, 408 A.2d 644, 647 (1979) (explaining that a party opposing summary judgment may not rest upon "mere allegations," but must come forward with affidavits or other evidence raising a factual dispute). We agree with the superior court that plaintiff failed to demonstrate any issue of material fact and that the affidavit showed that Nationwide was entitled to judgment as a matter of law.

¶ 21. Plaintiff makes two additional arguments for why the summary judgment decision was wrong: (1) the court failed to give plaintiff a hearing before granting the motion; and (2) the court failed to render a reasoned opinion with clear findings of fact. The short answer to the first claim is that "[i]n any case, the court . . . may dispose of the motion without argument." V.R.C.P. 78(b)(2). With respect to the second claim, the function of the court in considering a motion for summary judgment is not to make findings on disputed factual issues. See *Fritzeen v. Trudell Consulting Eng'rs, Inc.*, 170 Vt. 632, 633, 751 A.2d 293, 296 (2000) (mem.) ("It is not the function of the trial court to find facts on a motion for summary judgment . . . ."). While a trial court's recitation of the undisputed facts is often helpful for appellate review of a grant of summary judgment, they are not necessary, particularly in a case like this where the factual basis of the court's judgment is identified. We find no procedural error in the adjudication of the motion for summary judgment.

¶ 22. Finally, plaintiff raises two additional issues. First, he argues that the court committed error by not giving him access to Nationwide's claims file in discovery. Plaintiff sought an order to grant him access to the file after the court had ruled that he could not

enforce the default judgment against Nationwide without proving there was coverage. The court ruled that the file was irrelevant to the remaining issue of whether plaintiff was acting within the scope of his employment when the accident occurred. We agree that the grounds for the discovery order no longer existed. See *Concord Gen. Mut. Ins. Co. v. Madore*, 2005 VT 70, ¶ 15, 178 Vt. 281, 882 A.2d 1152 (concluding defendants' claim that court erred in denying them discovery was moot where request related to issue that was immaterial to policy exclusion). Second, plaintiff claims the court erred in dismissing his count that Nationwide acted in bad faith in its actions with respect to plaintiff and Riddle. Since we have found that Nationwide did not breach its duty to defend Riddle and properly denied coverage under the employment exclusion in the policy, there is no basis for a bad faith claim. *Serecky*, 2004 VT 63, ¶ 27.

*Affirmed.*