*Human Rights Defense Center v. Correct Care Solutions,* No. 51-2-19 Wncv (Tomasi, J., Oct. 18, 2019).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Washington Unit | Docket No. 51-2-19 Wncv |

| | |
|---|---|
| Human Rights Defense Center, <br> Plaintiff <br><br> v. <br><br> Correct Care Solutions, LLC, <br> Correctional Care Solutions, <br> Defendants | |

## Opinion and Order on Defendants' Motion for Judgment on the Pleadings

On September 12, 2019, this matter came before the Court for oral argument concerning the Defendants' Motion for Judgment on the Pleadings. Plaintiff Human Rights Defense Center (HRDC) was represented by Daniel Marshall, Esq., and Robert Appel, Esq.; Defendants Correct Care Solutions, LLC, and Correctional Care Solutions Group Holdings, LLC, d/b/a Wellpath [hereinafter "Wellpath"] were represented by Justin Barnard, Esq. HRDC brought this action seeking documents from Wellpath, pursuant to Vermont's Public Records Act (PRA). Wellpath maintains that it is a private entity not subject to the PRA. For the following reasons, Wellpath's motion is denied.

## Allegations of the Complaint

From roughly 2010 to 2015, Wellpath provided health care services to inmates committed to the care and custody of the Vermont Department of Corrections (the DOC). HRDC maintains that the provision of such health care is a

mandatory duty imposed on the DOC by both Vermont statutes, 28 V.S.A. § 801 (DOC "shall provide health care for inmates in accordance with the prevailing medical standards"), and the Eighth Amendment of the United States Constitution, which requires that correctional institutions provide inmates with "adequate medical care," *Deshaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 198–99 (1989) (discussing demands of U.S. Const. amend VIII). HRDC alleges that Wellpath "stood in the shoes" of the DOC in providing medical care to inmates and was the "functional equivalent" of a governmental agency in doing so.

Wellpath does not, for present purposes, dispute the above facts. Instead, it maintains that it is a private entity and is not subject to Vermont's PRA. It asserts that HRDC may well be able to obtain documents related to the care it provided to inmates, but HRDC must do so by seeking the records from the DOC, a governmental entity to which the PRA certainly applies.

Legal Standard

Wellpath has moved for Judgment on the Pleadings under Vt. R. Civ. P. 12(c). The standard for granting dismissal based on the pleadings is exacting. The question is whether, based solely on the pleadings, the moving party is entitled to judgment as a matter of law. *Reynolds v. Sullivan*, 136 Vt. 1, 3 (1978). "For the purposes of the motion all well pleaded factual allegations in the nonmovant's pleadings and all reasonable inferences that can be drawn therefrom are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." *Bressler v. Keller*, 139 Vt. 401, 403 (1981).

As the federal courts have repeatedly made plain: "A court applies the same standard to a motion for judgment on the pleadings as it does to a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2008). Our Supreme Court has held that dismissal under Vt. R. Civ. P. 12(b)(6) "is proper only when it is beyond doubt that there exist no facts or circumstances consistent with the complaint that would entitle Plaintiff to relief." *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575, 576 (mem.) (quoting *Union Mut. Fire Ins. Co. v. Joerg*, 2003 VT 27, ¶ 4, 175 Vt. 196, 198).

Accordingly, where "a plaintiff's pleadings contain allegations that, if proved, would permit recovery, a defendant may not secure a judgment on the pleadings." *Thayer v. Herdt*, 155 Vt. 448, 456 (1990); *see Knight v. Rower*, 170 Vt. 96, 98 (1999) (judgment warranted only if "pleadings contain no allegation that would permit recovery").

Not surprisingly, a motion seeking judgment on the pleadings is typically limited to the allegations set out in the pleadings. There are two exceptions to that rule. First, the Court can consider documents that are attached to the Complaint, that are subject to judicial notice, or that are so integral and interwoven with the Complaint that they must rightly be considered along with the Complaint. *See Shahi v. Standard Fire Ins. Co.*, No. 5:10-CV-15, 2010 WL 11610419, at *3 (D. Vt. Aug. 31, 2010); 5C Charles Wright, Arthur Miller, Mary Kane, and A. Benjamin Spencer, *Fed. Prac. & Proc. Civ.* § 1366 nn.32–34 (3d ed.) (collecting cases holding same).

3

Second, the Court may consider materials in addition to those noted above if it converts the motion for judgment on the pleadings into a motion for summary judgment. Vt. R. Civ. P. 12(d); *Concord Gen. Mut. Ins. Co. v. Madore*, 2005 VT 70, ¶ 8, 178 Vt. 281, 284; *see Sira v. Morton*, 380 F.3d 57, 66 (2d Cir. 2004). If it does make that conversion, the "court must notify the parties as to the changed status of the motion, and give them a reasonable opportunity to submit extra-pleading materials." *Fitzgerald v. Congleton*, 155 Vt. 283, 293 (1990). The decision of whether to rely upon materials dehors the pleadings is committed solely to the discretion of the trial judge. *Isquith for & on Behalf of Isquith v. Middle S. Utilities, Inc.*, 847 F.2d 186, 194 (5th Cir. 1988) (rule "gives a district court complete discretion to determine whether or not to accept any material beyond the pleadings" (internal quotation omitted); *Harper v. Lawrence Cty.*, 592 F.3d 1227, 1232 (11th Cir. 2010) ("A judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings.").

Analysis

The PRA was enacted by the Legislature to allow the "free and open" examination of public records. 1 V.S.A. § 315. As the Vermont Supreme Court has noted, the PRA is based on the "fundamental principle of open government that public officials 'are trustees and servants of the people and it is in the public interest to enable any person to review and criticize their decisions.'" *Price v. Town of Fairlee*, 2011 VT 48, ¶ 13, 190 Vt. 66, 72 (quoting 1 V.S.A. § 315). The PRA further states that: "All people, however, have a right to privacy in their personal

4

and economic pursuits, which ought to be protected unless specific information is needed to review the action of a governmental officer." The PRA's Statement of Purpose provides that the statutes "shall be liberally construed to implement this policy." 1 V.S.A. § 315.

The PRA allows persons to "inspect or copy any public record of a public agency." *Id.* § 316(a). Under the law, a public record is "any written or recorded information . . . which is produced or acquired in the course of public agency business." *Id.* § 317(b). And, a public agency is "any agency, board, department, commission, committee, branch, instrumentality, or authority of the State or any . . . political subdivision of the State." *Id.* § 317(a)(2).

Wellpath's argument for dismissal is textual and straightforward: the PRA allows access to public records held by public agencies and Wellpath is simply a private corporation. It asserts that the wording of the PRA does not allow records requests to be submitted to private entities and that the Supreme Court has been careful not to expand the Legislature's choice of language in the PRA to matters beyond the plain meaning of the text. *See Doyle v. City of Burlington Police Dep't*, 2019 VT 66, ¶¶ 8–10 (Vt. Sept. 13, 2019) (refusing to allow city to charge for time spent redacting public records for "inspection" where PRA only allowed for reimbursement of staff costs incurred in connection with requests to "copy" public records).

Additionally, Wellpath points to another section of the PRA that supports the conclusion that the Legislature did not intend the law to be used to access records of private corporations. Specifically, a later portion of Section 317 provides:

> (c) The following public records are exempt from public inspection and copying:
>
>         *                *                *
>
> (42) Except as otherwise provided by law, information that could be used to identify a complainant who alleges that a public agency, a public employee or official, *or a person providing goods or services to a public agency under contract* has engaged in a violation of law, or in waste, fraud, or abuse of authority, or in an act creating a threat to health or safety, unless the complainant consents to disclosure of his or her identity.

1 V.S.A. § 317(c)(42)(emphasis added).

Under the canon of statutory interpretation known as *expressio unius est exclusio alterius*, where "the Legislature includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that the Legislature did so advisedly." *Hopkinton Scout Leaders Ass'n v. Town of Guilford*, 2004 VT 2, ¶ 8, 176 Vt. 577, 579 (mem.). In Wellpath's view, if the term "public agency" already included governmental contractors, there would have been no need for the Legislature to include that additional definition in Section 317(c)(42).

HRDC takes a different approach. It views the language defining "public agency" to include instrumentalities and authorities of the State as showing a Legislative intent to subject to the PRA those entities acting as state instrumentalities or authorities. At a minimum, HRDC maintains that those terms

6

are not "plain" and are sufficiently ambiguous that resort should be had to the purposes and intent of the law to provide clarity as to the legislative meaning of those terms.

To provide such effect and meaning, HRDC asks that the Court adopt the "functional equivalence" test that has been employed in some other states in the context of assessing requests for records from quasi-governmental entities. Under that test, courts examine the following four factors to assess whether a purportedly private entity may be subject to a public records request:

> (1) whether the entity performs a governmental function; (2) the level of government funding; (3) the extent of government involvement or regulation; and (4) whether the entity was created by the government.

*Bd. of Trustees of Woodstock Acad. v. Freedom of Info. Comm'n*, 436 A.2d 266, 270–71 (Conn. 1980); *see Memphis Publishing Co. v. Cherokee Children & Family Services*, 87 S.W.3d 67, 78–79 (Tenn. 2002) (adopting same factors).

HRDC notes that the above four-factor test also has been adopted in two prior Vermont Superior Court decisions from this Unit. *See Prison Legal News v. Corr. Corp. of Am.*, No. 332-5-13 Wncv, 2014 WL 2565746 (Vt. Super. Ct. Jan. 10, 2014) (concluding that a private company that operated a prison housing state prisoners was subject to the PRA); *Whitaker v. Info. Tech. Leaders, Inc.*, No. 781-12-15 Wncv, 2016 WL 10860908 (Vt. Super. Ct. Oct. 27, 2016) (concluding that a

7

nonprofit organization providing health care information technology services to the State and other stakeholders was subject to the PRA).[1]

HRDC next refers to the purported "contract" between Wellpath and the DOC, which it refers to via an online Audit Report, to argue that the terms of that contract reflect sufficient governmental oversight and involvement to raise an issue of fact as to whether Wellpath is a "public agency" under the PRA. Ultimately, HRDC contends that the State should not be able to deny public access to and thwart public oversight over "governmental conduct" simply by contracting such functions to private entities.

In construing the PRA, the Vermont Supreme Court has sometimes relied upon interpretations of the analogous federal Freedom of Information Act (FOIA). *Toensing v. Attorney Gen.*, 2019 VT 30, ¶ 21 (2019) ("[I]n construing the PRA, we have routinely considered—even if we ultimately declined in some cases to adopt—federal courts' interpretations of FOIA provisions."). Under FOIA, courts have acknowledged that the definition of "agency" can be difficult to apply in the context of modern public/private partnerships and interactions. In *Forsham v. Harris*, 445 U.S. 169 (1980), the High Court examined whether a federal grantee could be subject to FOIA. After examining the statutory framework and the factual record, the Court ruled that the grantee was not a public agency. The Court held:

---

[1] At least one other Superior Court has cited with favor that four-factor test. *Sleigh v. Barrett*, No. 158-7-18 Oscv (Vt. Super. Ct. Mar. 28, 2019); *see also Long v. City of Burlington*, No. 996-11-16 Cncv (Vt. Super. Ct. Oct. 10, 2017) (mentioning but not employing the functional equivalence test).

"Congress did not intend that grant supervision short of Government control serve as a sufficient basis to make the private records 'agency records' under the Act, and reveal a congressional determination to keep federal grantees free from the direct obligations imposed by the FOIA." *Id.* at 182.

In a series of cases, the United States Court of Appeals for the District of Columbia and its trial courts have also acknowledged that a private entity could, under limited circumstances, be the "functional equivalent" of a public entity and thereby become subject to the FOIA. In *Washington Research Project, Inc. v. Dep't of Health, Ed. & Welfare*, 504 F.2d 238 (D.C. Cir. 1974), the court examined whether reports prepared by outside consultants were reports of the federal department. The court held: "Employing consultants to improve the quality of the work that is done cannot elevate the consultants to the status of the agency for which they work unless they become the functional equivalent of the agency, making its decisions for it. . . . The important consideration is whether [the consultant] has any authority in law to make decisions." *Id.* at 247–48. The court concluded that the consultants were not the functional equivalent of the agency. The court ended by noting that the myriad and changing relationships between the government and private entities make "it clear that any general definition [of agency] can be of only limited utility . . . . The unavoidable fact is that each new arrangement must be examined anew and in its own context." *Id.* at 245–46.

Similarly, in *Pub. Citizen Health Research Grp. v. Dep't of Health, Ed. & Welfare*, 668 F.2d 537 (D.C. Cir. 1981), the court examined whether a private

9

medical entity that contracted with a federal department to review and approve payment for medical services provided by a governmental entity was subject to FOIA. The court, again, declined to adopt a specific test to make that determination but focused on the intent of Congress in creating the statutory structure and concluded that Congress intended the private group to be private. *Id.* at 544. *See also id.* at 544–45 (Tamm, J., concurring) (acknowledging difficulties presented by lack of a specific test to determine public agency status but indicating need for flexibility in light of modern governmental relationships); *Lombardo v. Handler*, 397 F. Supp. 792, 796 (D.D.C. 1975), *aff'd*, 546 F.2d 1043 (D.C. Cir. 1976) (National Academy of Sciences is not a public agency under FOIA where there has been "no significant delegation of governmental authority, jurisdiction, administrative function or power. The academy may be an ally of the government, but it is not an authority of the government of the United States.") (internal quotation omitted)).

Though arguing against the four-factor functional equivalency test, in light of the above precedents, Wellpath conceded at oral argument that there could be scenarios where there is such governmental oversight and entanglement with a private entity that the entity could become subject to the PRA. It maintained, however, that the "facts" involved here could not reach that high bar.

There is significant force to the arguments of both sides in this matter. The Court is persuaded that there may be limited circumstances where a private entity has entered into a relationship with the government whereby it subjects itself to the

PRA. The Court is not convinced, at this stage, however, that the four-factor test previously adopted by this court is the proper lens through which to make that determination or whether what appears, at first blush, to be the somewhat higher standard developed in the FOIA context provides the more appropriate framework.[2]

Nor does the Court believe it appropriate to make that legal determination in the vacuum of a Motion for Judgment on the Pleadings and the limited facts considered in connection with such a motion. The Court does not have before it the specifics of the contract or contracts at issue, evidence as to the type of and amount of oversight provided by DOC over the years involved, the decision-making authority of Wellpath, or the autonomy of Wellpath, to name only a few pieces of potentially relevant evidence. Indeed, the Court could easily imagine a contract that required the contracting entity to submit itself to PRA requests for documents. While the Court acknowledges that it may be able to take notice of and consider the Vermont State Auditor's Report referenced by HRDC that purports to examine, at least, a portion of the relationship between DOC and Wellpath, such a secondary

---

[2] In a supplemental memorandum, HRDC contends that Wellpath is subject to the PRA on the independent ground that its records in connection with DOC are "public records." It argues that a public record includes records "produced or acquired in the course of public agency business." In the Court's view the argument goes too far. Under that approach, any document generated by a public agency and provided to any person or entity would be a public record and the holder would be subject to the PRA. The Court does not believe the Legislature intended such a result. While there may be circumstances where a public record is placed in the care of a private entity, *see Toensing v. Attorney Gen.*, 2017 VT 99, ¶¶ 21–23, 206 Vt. 1, 13, that does not mean that any person or entity holding a governmental document is itself directly subject to the PRA.

11

source is not convincing primary evidence of the full relationship between DOC and Wellpath as concerns the PRA.

The Court is also mindful that the State of Vermont would appear to have a vital interest in the interpretation of the PRA as it relates to its contractors. For example, a ruling one way or the other could have a potentially significant impact on present relations with governmental contractors or may affect the State's ability to obtain contractors in the future. It does not appear that the State offered its views in this Unit's consideration of this issue in prior cases. While the Court has no explicit authority to permit the State to intervene in this action, *cf.* Vt. R. Civ. P. 24(d) (requiring notice to Attorney General and opportunity for intervention when the constitutionality of a state statute is at issue), it will provide a copy of this decision to the Office of the Vermont Attorney General. Should the Attorney General wish to request an opportunity to submit an *amicus curia* brief in connection with future dispositive motions in this matter, he may make that request to the Court.

In sum, the Court does not believe Wellpath is entitled to judgment as a matter of law. The Complaint alleges that Wellpath "stood in the shoes" of DOC in providing medical care. Though a somewhat metaphorical allegation, in light of the above authorities, the Court cannot conclude that there is no set of facts under which Wellpath could be subject to the PRA. To make that determination, the Court requires a full understanding of the legal and factual relationship between the DOC and Wellpath.

12

<u>Conclusion</u>

WHEREFORE, Wellpath's Motion for Judgment on the Pleadings is denied. The Court requests that, within 21 days, the parties confer and submit a proposed discovery/scheduling order, with reasonable deadlines, for the Court to review.

Dated this __ day of October 2019 at Montpelier, Vermont.

_____
Timothy B. Tomasi,
Superior Court Judge