VERMONT SUPERIOR COURT

Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org



Docket No. 23-ENV-00078

---

| | |
|---|---|
| **NEWSVT District Commission Appeal** | **DECISION ON MOTIONS** |

---

This is an appeal of a June 1, 2023 minor permit amendment issued by the District #7 Environmental Commission (District Commission) to New England Waste Services of Vermont (NEWSVT) for the construction and operation of a Phase III underdrain (UD-III) per- and polyfluoroalkyl substances (PFAS) treatment system at its existing landfill facility in Coventry, Vermont (the Property). Don't Undermine Memphremagog's Purity, LLC (DUMP) appealed the District Commission's decision to this Court, arguing that NEWSVT's application should have been heard as a major permit amendment.

On January 22, 2024, NEWSVT filed a motion to dismiss this appeal, which the Court converted to a motion for summary judgment on April 29, 2024. NEWSVT District Commission Appeal, No. 23-ENV-00078, slip op. at 6 (Vt. Super. Ct. Envtl. Div. April 29, 2024) (Walsh, J.). In that Decision, the Court further ordered the parties to file all materials pertinent to a motion for summary judgment that they wished the Court to consider. Id. Presently before the Court are the parties' cross-motions for summary judgment on the issues of whether the Questions posed in DUMP's revised Statement of Questions raise substantive issues under Act 250 Rule 51, and whether the Questions constitute a collateral attack on previously issued Act 250 permits.

In this matter DUMP is represented by James A. Dumont, Esq. NEWSVT is represented by Matthew B. Byrne, Esq. and Timothy M. Eustace, Esq. The Natural Resources Board (NRB) and the Agency of Natural Resources (ANR) are interested parties in this matter, but neither party weighed in on the present cross-motions. They are represented by Jenny E. Ronis, Esq. and Elizabeth F. Lord, Esq., respectively.

## Legal Standard

To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a), applicable here through V.R.E.C.P. 5(a)(2). When considering cross-motions for summary judgment, the Court considers each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332. In determining whether there is any dispute over a material fact, "we accept as true allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted); V.R.C.P. 56(c)(1)(A).

## Undisputed Material Facts

We recite the following factual background and procedural history, which we understand to be undisputed unless otherwise noted, based on the record now before us and for the purpose of deciding the pending motion. The following are not specific factual findings relevant outside the scope of this decision on the pending motion. See Blake v. Nationwide Ins. Co., 2006 VT 48, ¶ 21, 180 Vt. 14 (citing Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (mem.)).

1. On December 29, 2021, NEWSVT submitted an application for the construction and operation of a Phase III underdrain (UD-III) PFAS treatment system at its existing landfill facility in Coventry, Vermont (the Project).

2. The application specifically describes the Project as "the installation of treatment vessels at the Phase III underdrain discharge location to reduce per- and poly-fluoroalkyl substances (PFAS) requiring about 300 cubic yards of excavation, the installation of concrete walls, treatment vessels, piping, and may include the installation of a removable roof, if needed." Ex. 7, LUP #7R0840-14 Application, at 2.

3. UD-III consists of trenches with perforated pipes embedded below the landfill and was designed to collect groundwater and divert it away from the landfill liner.

4. The groundwater collected by UD-III is discharged at the upper edge of a Class II forested wetland.

5. On April 29, 1998, the District Commission issued Land Use Permit #7R0841-4 which initially authorized Phase III of the landfill (LUP #7R0841-4).

6. Phase III involved the development of 19 acres of additional double-lined landfill, along with leachate collection and storage facilities, a perimeter access road, and stormwater management system improvements.

7. LUP #7R0841-4 specifically authorized the construction of UD-III and the discharge of groundwater therefrom.

8. Phase III required several additional permit approvals including the following: (i) Conditional Use Determination #93-038-2, dated Aug. 27, 1997 (wetlands), issued by the Agency of Natural Resources (ANR); (ii) Solid Waste Management Facility 4th Amended Certification OL510, dated March 20, 1998, issued by ANR; (iii) Phase III Variance No. SW-97-1, dated Nov. 17, 1998, issued by the Vermont Solid Waste and Air Quality Variance Board.

9. Each of these previous permits associated with Phase III contemplated discharges from UD-III.

10. ANR has required semi-annual monitoring of PFAS within the UD-III discharges since 2019.

11. On September 2, 2021, ANR ordered NEWSVT to "move forward with designing, permitting and installing a PFAS treatment system for [Underdrain III]." NEWSVT Ex. 3 at 1.

12. On February 28, 2023, ANR's Solid Waste Management Program (SWMP) issued a Solid Waste Management Facility Certification 1st Major Amendment to NEWSVT for the construction and operation of the pilot PFAS treatment system (the Solid Waste Certification).

13. The Solid Waste Certification imposes various testing, monitoring, and reporting requirements for the pilot treatment system.

14. The Solid Waste Certification was not appealed.

15. The UD-III treatment system was installed in 2023 and became operational on or about September 1, 2023.

**Discussion**

DUMP's opposition to the PFAS treatment facility at issue in the application before the Court is a collateral attack on previous Act 250 permits authorizing the discharge of groundwater from UD-III. "Where a land [use] permit decision becomes final, a party cannot later collaterally attack that final decision through a separate proceeding." In re Champlain Parkway Wetland Conditional Use Determination, 2018 VT 123, ¶ 30, 209 Vt. 105 (citation omitted). The prohibition against collateral attacks applies to municipal zoning permits, ANR permit decisions, and Act 250 land use permits. Id. (citation omitted).

The application before the Court for the PFAS treatment system is only tangentially related to the discharge from UD-III. As the Court previously explained in its November 8, 2023 Entry Order, and repeated in its April 29, 2024 Decision:

> An Act 250 permit was previously issued for this discharge [from Underdrain III]. See NEWSVT Ex. 4. Thus, [to] the extent that DUMP seeks to address the existence of the Underdrain 3 and the preexisting discharge, that is not before the Court in this appeal as it has been previously permitted and is final and binding.

In re NEWSVT Dist. Comm'n Appeal, No. 23-ENV-00078, slip op. at 4 (Vt. Super. Ct. Envtl. Div. Nov. 8, 2023) (Walsh, J.). NEWSVT has already received permits authorizing the discharge of groundwater through UD-III. Land Use Permit #7R0840-4, issued on April 29, 1998, initially authorized discharges from the underdrain more than 25 years ago. The Project on appeal is for the installation of treatment vessels at the already permitted underdrain. The Project will involve "300 cubic feet of excavation, the installation of concrete walls, treatment vessels, piping, and may include the installation of a removable roof, if needed." Ex. 7, LUP #7R0841-14 Application, at 2. The Project does not include a request for authorization for discharge at UD-III because, as set forth above, the general discharge at this location has already been permitted.

Instead of addressing the application before the Court and its specific potential impacts, DUMP's revised Questions all relate to the discharge, generally, of pollutants from the underdrain. Inherent to each of DUMP's revised Questions is the assumption that the permit amendment application before the Court for the treatment facility also authorizes or seeks authorization of the discharge of groundwater from UD-III. DUMP argues that because no previous Act 250 permit specifically authorized the discharge of PFAS, cadmium, or arsenic from UD-III, its arguments pertaining to the discharge of these pollutants should not be considered a collateral attack on the previous permits authorizing discharges from UD-III, generally. By extension, DUMP argues that the discharge of newly discovered pollutants must necessarily implicate those Act 250 criteria relating to waste disposal (Criterion 1(B)) and wetlands (Criterion 1(G)) such that a hearing before the District Commission is required. These arguments misconstrue the scope of the application before the Court, which is for the construction and operation of a treatment facility within the already permitted UD-III.

Even if we were to conclude that this is not a collateral attack on the previously issued Act 250 permits for UD-III, DUMP has failed to satisfy its evidentiary burden under Act 250 Rule 51 by showing that the construction and operation of the pilot treatment facility raises a substantive issue

with respect to Act 250 Criteria 1(B) and 1(G) that would entitle them to a hearing. Act 250 Rule 51 requires that upon receipt of a request for a hearing, the District Commission, and by extension this Court, "shall determine whether or not substantive issues have been raised under the criteria and shall convene a hearing if it determines that substantive issues have been raised." Act 250 Rules, Rule 51. The evidentiary burden is on the party requesting the hearing to show that a substantive issue exists. In re RCC Atlantic, Inc., No. 163-7-08 Vtec, slip op at 8 (Vt. Envtl. Ct. May 8, 2008) (Durkin, J.).

DUMP has not shown that the physical construction and operation of the treatment facility involves substantive issues under any of the Act 250 Criteria. All of DUMP's proffered substantive issues address the discharge from UD-III, generally, which has been authorized by Act 250 via a permit not before the Court. The Project before the Court does not create any new discharges or change the volume of materials running through the already permitted underdrain.[1] In fact, the Project is being implemented to reduce PFAS concentrations in the permitted discharge and alleviate many of the impacts DUMP alleges. Accordingly, we conclude that the material facts are not in dispute and reject DUMP's request for a hearing and **GRANT** summary judgment in favor of NEWSVT.[2] DUMP's cross-motion is therefore **DENIED**.

### Conclusion

The discharges from UD-III were previously permitted by LUP #7R0841-4 and subsequent amendments. Those decisions cannot be collaterally attacked in this proceeding on the application for the UD-III PFAS treatment facility. Even so, DUMP has not met its burden of showing that the

---

[1] The relief that DUMP ultimately seeks, i.e., a permit condition requiring NEWSVT to obtain a National Pollution Discharge Elimination System (NPDES) permit, is far outside the scope of this minor permit amendment proceeding.

[2] In reaching this determination, we note the unique permitting scheme that governs this treatment project. In 2021, ANR directed NEWSVT to design and implement a treatment system for UD-III. In doing so, ANR required NEWSVT to obtain an amended Solid Waste Facility Certification, which was issued in February 2023. The amended certification contained various testing, monitoring, and reporting requirements. DUMP participated in those amendment proceedings but did not appeal the final permit. Now, DUMP seeks to challenge the sufficiency of this Act 250 minor permit amendment for the construction and operation of the treatment facility by arguing that the permit fails to address the presence newly discovered pollutants in the UD-III discharges. In doing so, DUMP asks this Court to adjudicate issues that are outside the scope of the application presently before the Court. Rather, it seems to the Court that DUMP's proper venue to address the discharge from UD-III and the sufficiency of the proposed treatment system would have been during the solid waste certification proceedings.

treatment facility for the removal of PFAS from UD-III will raise substantive issues with any of the Act 250 criteria. For all these reasons, we **GRANT** NEWSVT's motion for summary judgment and **DENY** DUMP's cross-motion.

This concludes the matter before the Court. A Judgment Order accompanies this Decision.

Electronically signed August 28, 2024 pursuant to V.R.E.F. 9(D).

Thomas G. Walsh, Judge
Superior Court, Environmental Division