# STATE OF VERMONT

# ENVIRONMENTAL COURT

|                                          |   |                        |
|------------------------------------------|---|------------------------|
| **In re: Rivers Dev. Con. Use Appeal**   | } | **Docket No. 7-1-05 Vtec** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|                                          |   |                        |
|------------------------------------------|---|------------------------|
| **In re: Rivers Dev. Act 250 Appeal**    | } | **Docket No. 68-3-07 Vtec** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|                                          |   |                        |
|------------------------------------------|---|------------------------|
| **In re: Rivers Dev. ANR UIC JO**        | } | **Docket No. 183-8-07 Vtec** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|                                          |   |                        |
|------------------------------------------|---|------------------------|
| **In re: Rivers Dev. Indirect Discharge JO** | } | **Docket No. 248-11-07 Vtec** |

## Corrected[1]

## Decision on Neighbors' Motion for Summary Judgment

These appeals, some of which[2] are consolidated for trial now set to begin on February 12, 2008, arise out of decisions by the Development Review Board ("DRB") of the Town of Moretown, and the District #5 Environmental Commission in which Rivers Development, LLC ("Rivers") was denied a conditional use permit and an Act 250 land use permit to construct and operate a stone processing quarry in the Town of Moretown ("Moretown").

Appellant-Applicant Rivers is represented by James Caffry, Esq. and Christopher J. Nordle, Esq.; Cross-Appellant "Neighbors"[3] are represented by David L. Grayck, Esq. and

---

[1] This Corrected Decision is issued in connection with the granting of Neighbors' motion for clarification. See Entry Order dated January 18, 2008.

[2] Docket No. 7-1-05 Vtec concerns the DRB's denial of Rivers's zoning and conditional use applications. Docket No. 68-3-07 Vtec concerns the denial by the District #5 Environmental Commission of Rivers's Act 250 land use permit application. Docket No. 183-8-07 concerns the opinion issued by the Agency of Natural Resources that Rivers's Quarry does not require an underground injection control permit. Docket No. 248-11-07, the most recent appeal, concerns the opinion issued by the Agency of Natural Resources that Rivers's Quarry requires an indirect discharge permit, but we note that is has not yet been consolidated with the preceding dockets. The consolidated appeals have been set for trial; the most recent appeal has not yet been set for trial.

[3] "Neighbors" includes the following individuals to whom the District Environmental Commission granted individual party status in the Act 250 proceedings pursuant to 10 V.S.A. § 6086; these individuals have retained their party status in these proceedings, pursuant to V.R.E.C.P. 5(d)(2): Thomas Allen, Robert Dansker, Jack Byrne, Virginia Farley, Doug Hall, Cindy Hall, June Holden Life Estate, Rick Hungerford, Rita Larocca, Robert McMullin, Beverly McMullin, John Porter, Scott Sainsbury, Patricia Sainsbury, Sandy Porter, Benjamin Sanders, Denise

Zachary K. Griefen, Esq.; Cross-Appellant Arthur Hendrickson and Linda Hendrickson are united with the Neighbors, but are representing themselves pro se;[4] Cross-Appellant Town of Moretown is represented by Ronald Shems, Esq. and Geoffrey H. Hand, Esq.; and the Land Use Panel of the Natural Resources Board ("NRB"), appearing in the Act 250 proceeding as an Interested Person, is represented by Aaron Adler, Esq.

Neighbors have moved for summary judgment on three issues. First, Neighbors assert that the proposed Quarry cannot secure a positive finding under the fourth conditional use criteria in the Moretown Zoning Regulations ("MZR"), concerning conformance with bylaws in effect, since the Quarry haul trucks would violate the noise standard found at MZR § 4.10(B)(1). Second, the Neighbors assert that the proposed Quarry cannot comply with Act 250 Criteria 10 (i.e.: 10 V.S.A. § 6086(a)(10) (conformance with the Town Plan)), because Chapter Four from the Town of Moretown Town Plan ("Town Plan") requires that the extraction of gravel not permanently scar the landscape. Finally, Neighbors assert that Rivers cannot meet its burden of production and burden of persuasion concerning the safe use of the chemicals, explosives and equipment at the Quarry. In Moretown's response, it supports the Neighbors' motion. Conversely, Rivers opposes the Neighbors' motion.

## Factual Background[5]

The Court recently issued its Interim Decision, dated January 8, 2008, concerning the previous motions filed in the first two consolidated appeals.[6] In that Interim Decision, we reviewed the material facts concerning the proposed Quarry, the municipal proceedings, and the Act 250 proceedings. We incorporate that recitation of the material facts by reference, rather than repeating it here. For purposes of our review of the pending motion, we note the following additional material facts:

Sanders, Karen Sharpwolf, Ruth Van Heuven, Martin Van Heuven, and Constance Van Heuven. This Court's July 3, 2007 Decision denied certain requests for additional party status, but did not disturb these Neighbors' pre-existing party status, as conferred by the District Commission.

[4] Our subsequent references in this Decision to "Neighbors" include the Hendricksons.

[5] All facts recited or referenced here are undisputed unless otherwise noted. For purposes of this motion only, we view the material facts in a light most favorable to the non-moving parties. V.R.C.P. 56(c). We are not yet at the stage of making specific factual findings. Thus, our recitation here should not be regarded as factual findings. See Blake v. Nationwide Ins. Co., 2006 VT 48, ¶ 21, 180 Vt. 14, 24, citing Fritzen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000)(mem.).

[6] Docket No. 7-1-05 Vtec and 68-3-07 Vtec

*A.      Town Plan and Zoning Regulations.*

1.      Chapter Four of the Town Plan, entitled "Natural and Cultural Resources", states that the DRB "shall, through the conditional use review process, ensure that the extraction of gravel and other mineral resources does not permanently scar the landscape."

2.      The Moretown Zoning Regulations applicable to Rivers's municipal permit applications[7] state at § 4.10(B)(1) that "[n]o noise shall be permitted which is excessive at the property line or incompatible with the reasonable use of the surrounding area.  Excessive noise shall be considered a sound pressure level that exceeds 70 decibels at the property line on a regular or recurring basis."

*B.      Proposed Quarry and Related Operations.*

3.      Rivers proposes that the Quarry will have a maximum extraction rate of 75,000 cubic yards of rock product per year and will operate over an approximately thirty-three year period. Rock extraction will be completed in six phases, with the order of phases depending on the physical characteristics of the site and the unearthed material.

4.      As with many quarries, Rivers's reclamation plan does not return the site to its original or natural contours, instead leaving the benched faces exposed.  The stacked benches will leave an exposed rock face that will have a maximum height of 210 feet.[8]  Portions of the exposed benched faces will be visible from several places in Moretown, including the Moretown Common Road and Route 100B.[9]

5.      The proposed Quarry access will be from Route 100B via an existing woods road, approximately 1,400 feet in length.  The access road to the Quarry will require improvements and grading in order to accommodate the haul trucks.  Rivers proposes to remove approximately 895 feet of ledge along the northern edge of Route 100B to the east of the Quarry access road, so as to satisfy the Vermont Agency of Transportation sight distance requirements for trucks exiting the Quarry.

---

[7]  This would be the Zoning Regulations adopted March 7, 2000 and not the amended Regulations finally adopted on August 2, 2004, while Rivers's application was under consideration.  See Interim Decision of Jan. 8, 2008 at 6–9.

[8]  A single bench level will be about fifteen feet in height; therefore, the maximum height of 210 feet of exposed face is approximately fourteen stacked benches.  Rivers avers that the exposed rock faces in the Quarry would not be visible in their entirety due to topographical and pre-existing vegetative visual barriers.

[9]  Neighbors assert that the Quarry floor will be visible from several places in Moretown.

6.     The Quarry will generate a maximum of fifty-four loaded haul trucks per day (i.e.: 108 one-way vehicle trips) and up to ten other vehicles trips (i.e.: twenty additional one-way vehicle trips for employees and other business invitees).

7.     A haul truck produces noise greater than seventy decibels at a distance of fifty feet. However, as the distance and vegetation increase, and as the topography changes, the decibel level may decrease.

8.     As shown on Rivers's "Project Overview Plan, Sheet 1 of 7", the distance from the Quarry haul road, where it intersects with Route 100B, to the Holden property line is approximately 225 feet.  The distance from the haul road to the McMullin property line is approximately 150 feet.

9.     Rivers proposes to operate the following equipment at the Quarry site: one hydraulic rock drill; one excavator; one bucket loader; one six by twenty foot triple deck screener; one yard/water truck; one backhoe; one crusher with a total capacity of one hundred cubic yards per hour; and other miscellaneous equipment as needed.  Rivers has yet to purchase this equipment and cannot at this time identify the specific make and model of this equipment.

## Discussion

We note that Neighbors' pending motion seeks a summary denial of Rivers's pending applications and a determination that a hearing on the merits, now scheduled to be conducted over two weeks, beginning February 12th, is unnecessary.  Our Supreme Court has repeatedly stated that summary judgment is only appropriate "when there are no genuine issues of material fact and, viewing the evidence in a light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law."  In re Carter, 2004 VT 21, ¶ 6 (citation omitted); V.R.C.P. 56(c).  In determining whether there is a disputed issue of material fact, we are directed to show great deference to the non-moving party in favor of affording each party the opportunity to present their facts at trial.  Id.  In the course of our review of a pre-trial summary judgment request, we are directed to "accept as true [all] allegations presented in opposition to summary judgment if they are supported by affidavits or other evidentiary material", Chapman v. Sparta, 167 Vt. 157, 159 (1997), and that "the party opposing summary judgment is entitled to the benefit of all reasonable doubts and inferences . . .."  Montgomery v. Devoid, 2006 VT 127, ¶ 28, 915 A.2d 270, 280 (citing Carr v. Peerless Ins. Co., 168 Vt. 465, 476 (1998)).  "If there is a genuine issue of material fact, summary judgment may not serve as a substitute for a

4

determination on the merits." Devoid, 2006 VT 127, ¶ 9 (citing Human Rights Comm'n v. Benevolent & Protective Order of Elks, 2003 VT 104, ¶ 11, 176 Vt. 125). It is with this procedural foundation in mind that we begin our analysis of the issues raised in Neighbors' pending motion.

**Moretown Noise Standard**

Neighbors assert that the Quarry haul trucks will produce noise at such a level as to make it impossible for Rivers to show at trial that its proposed Quarry will be in conformance with the bylaws in effect at the time of the filing of its application, thereby being in violation of MZR § 5.2(C). We therefore begin with an analysis of that bylaw provision.

The Moretown Zoning Regulations present five criteria for conditional use approval. MZR § 5.2(C). Each criterion directs that a proposed project be shown by the applicant to not have an adverse affect on (1) the capacity of existing or planned community services or facilities; (2) the character of the area; (3) traffic on area roads and highways; (4) the applicable municipal bylaws; and (5) the utilization of renewable resources. MZR §§ 5.2(C)(1)–(5).

By their motion, Neighbors assert that Rivers will be unable to present evidence at trial that its proposed Quarry complies with MZR § 5.2(C)(4). That specific subsection requires that the DRB (and this Court on appeal) "shall consider whether the proposed development complies with all bylaws in effect at the time of application . . .." Neighbors specifically challenge Rivers's ability to show compliance with the performance standard from MZR § 4.10(B)(1), which states that "[n]o noise shall be permitted which is excessive at the property line or incompatible with the reasonable use of the surrounding area. Excessive noise shall be considered a sound pressure level that exceeds 70 decibels at the property line on a regular or recurring basis." This performance standard "appl[ies] to all uses, with the exception of agriculture and forestry, in all [zoning] districts", including the Agriculture-Residential District in which the Quarry would be located. MZR § 4.10(B).

Neighbors allege that the Quarry will necessarily contravene the performance standard from MZR § 4.10(B)(1) because the proposed haul trucks may produce noise greater than seventy decibels at a distance of fifty feet. The Quarry is expected to generate a maximum of fifty-four loaded haul trucks trips per day on the haul road and Route 100B. Neighbors rely on Rivers's Noise Impact Study, produced by Rivers's expert, Dr. Hundal, and the Project Overview Plan, produced by Rivers's engineer, to calculate the noise levels which could be

expected on several neighboring properties. According to Neighbors' calculations, § 4.10(B)(1) will be violated "every time a truck crosses the property line while entering or exiting the proposed quarry site." Neighbors' Motion for Summary Judgment, at 6. This violation, Neighbors assert, will occur on a regular and reoccurring basis and therefore establish a basis for denial of Rivers's conditional use application, as a matter of law.

Rivers disputes Neighbors' interpretation of Dr. Hundal's report. First, Rivers contends that Dr. Hundal has yet to testify at trial, thus precluding an opportunity to contest Neighbors' interpretation and analysis of his study. Second, Rivers asserts that Neighbors have misconstrued Dr. Hundal's study by using the peak sound level rather than the expected sound level, thereby giving an inflated noise level at the property line. While not expressly stated, we understand Rivers to also object to Neighbors' interpretation of MZR § 4.10(B)(1) as being applicable to truck traffic at the Quarry boundary and along Route 100B, rather than the noise produced by the general operation of the Quarry, as measured at the boundary line.

Neighbors present an intriguing legal analysis of MZR § 4.10(B)(1). If adopted by this Court, it would appear that any development in Moretown requiring conditional use approval and relying upon car or truck travel[10] must be deemed to be in violation of MZR § 4.10(B)(1). Such an interpretation of MZR § 4.10(B)(1) may be required of this Court, but given its enormous impact, the lack of any previously similar interpretations by the Moretown DRB, or an interpretation of a similar municipal regulation by this Court, we decline to so rule until after receiving all admissible evidence on this issue at trial.

Summary judgment is therefore not appropriate because there is a material fact in dispute: specifically, whether haul trucks will violate the § 4.10(B)(1) noise standard. In determining that there is a disputed issue of material fact, we accepted as true the allegations presented in Rivers's opposition to summary judgment because they were supported by evidentiary material. Chapman, 167 Vt. at 159. Further, Rivers is entitled to the benefit from all reasonable doubts and inferences it raised in its opposition and attached affidavit. Devoid, 2006 VT 127, ¶ 28. Because there is a genuine issue of material fact, summary judgment may not serve as a substitute for a determination on the merits. Id. at ¶ 9. Therefore, Neighbors' Motion for Summary Judgment as to conformance with MZR § 4.10(B)(1) (noise standard) is DENIED.

---

[10] Neighbors "note that even cars and light trucks produce a noise [of] 76 dBA at twenty-five feet." Neighbors' Reply to Rivers's Opposition to Summary Judgment, filed December 14, 2007, at footnote 1.

**Permanent Scar on the Landscape**

Neighbors have also moved for summary judgment by alleging that the exposed rock benches in the Quarry constitute a permanent scar on the landscape in contravention of the Moretown Town Plan.

Act 250 places the burden upon an applicant to demonstrate that its proposed project "[i]s in conformance with any duly adopted local or regional plan . . . under chapter 117 of Title 24." 10 V.S.A. § 6086(a)(10). Town Plan Chapter Four, entitled "Natural and Cultural Resources", states that the DRB "shall, through the conditional use review process, ensure that the extraction of gravel and other mineral resources does not permanently scar the landscape . . .." The Neighbors assert that this Court must conclude, pre-trial, that the proposed Quarry operation will permanently scar the landscape. If we conclude that this fact is undisputed, particularly after viewing all evidence in a light most favorable to Rivers and affording Rivers the benefits of all reasonable doubts and inferences, as we must under the precedent of Carter, Chapman, and Montgomery, then we are obligated to grant Neighbors' pre-trial summary judgment motion.

Neighbors and Rivers present divergent aesthetic descriptions of the proposed Quarry. Neighbors contend that the "exposed rock face and/or quarry floor will be visible from many places within Moretown" and that the Quarry "will present an exposed rock face ranging up to 210 feet high." Neighbors' Motion for Summary Judgment at 1, 2. Rivers counters that there will not "be any line of sight to the quarry floor from off site" and "that the largest exposure of rock face [visible from off site will] be 45 feet in height from a distance of 8,053 feet (1.52 miles)." Rivers's Response to the Neighbors' Motion for Summary Judgment at 5; See also Affidavit of Gunner McCain at ¶ 7; T.J. Boyle and Associates Sight Line Report.

Through this jumble of assertions, an undisputed fact emerges: at a minimum, there will be forty-five feet of exposed rock face visible from off of Rivers's property. Thus, both parties agree that there will be some ability off site to view some part of the exposed benches of the Quarry, but they dispute the extent of that view.

Whether exposed rock face constitutes a "permanent scar" is a mixed question of law and fact. Following V.R.C.P. 56(c), viewing the facts in a light most favorable to Rivers, the Court cannot say, based on the evidence presented pre-trial, that a limited view of forty-five feet of exposed face constitutes a permanent scar on the landscape. The facts presented here may form a sufficient basis to rule in Neighbors' favor at trial, but we cannot do so now, given the

7

procedural posture of the pre-trial summary judgment motion and given the absence of live testimony and cross-examination, so that the Court may determine the appropriate weight and credibility to afford the testimony. Summary judgment is therefore not appropriate. There is a material fact in dispute: specifically, whether there is sufficient exposure of the rock face to constitute a permanent scar on the landscape. We therefore decline to grant Neighbors' motion on this basis.

**Rivers's Burden of Production**

Neighbors have also asserted that they are entitled to summary judgment because of Rivers's failure to identify the specific chemicals, explosives and equipment to be used at its proposed Quarry. Rivers counters that it has presented enough information to the Court in order to satisfy its burden of production, and that it will satisfy its burden of persuasion at trial.

In response to Question 7 of Neighbors' first set of discovery requests, Rivers admits that it "has not determined what equipment it will use for, by or in preparation of the Project." In response to Neighbors' Question #8, Rivers admits that it "has not and cannot determine every substance which will be used . . . in preparation, construction and operation of the Project" and cannot commit to "using any particular explosive, or any particular equipment."

Neighbors are correct in noting that in the municipal permit appeal, Rivers bears the "burden of proving that [its] application complies with the applicable zoning ordinance provisions", In re Appeal of McLaughlin, Docket No. 42-2-05 Vtec, slip op. at 8 (Vt. Envtl. Ct., March 13, 2006), and in the Act 250 permit appeal, Rivers "carries the initial burden of producing some evidence that would allow for positive findings upon each of the applicable Act 250 criteria." Route 103 Quarry, Docket No. 205-10-05 Vtec, slip op. at 8 (Vt. Envtl. Ct., Nov. 22, 2006) (citations omitted). Burdens of proof and their components are often the determinative factor in many land use appeals. We must analyze its subsets in order to properly address the legal issue Neighbors raise here.

First, we note that the burden of production is something less than the burden of persuasion. Malaney v. Hannaford Bros. Co., 177 Vt. 123, 130–135 (2004). To meet the burden of production, a party is required to introduce evidence, often of a minimal nature, relating to the assertion of a material fact. Meeting the burden of persuasion requires more, namely that the party must present evidence sufficient to prove its case. The facts sufficient to fulfill a party's burden of persuasion are usually presented at trial.

8

Here, Rivers has presented evidence relating to the equipment it intends to use at the Quarry. Rivers proposes to operate the following equipment at the Quarry site: one hydraulic rock drill; one excavator; one bucket loader; one six by twenty foot triple deck screener; one yard/water truck; one backhoe; one crusher with a total capacity of one hundred cubic yards per hour; and other miscellaneous equipment as needed. We have found no legal precedent requiring an applicant to commit to a specific make and model of equipment at this point in the permitting process. Rather, applicants often make representations at trial of the maximum level of noise or other disturbances that will be emitted by the equipment they propose to use within their project. Any actual noise or other disturbance emitted in excess of maximums incorporated into any permit that may issue could be grounds for a permit violation or revocation proceeding. To require an applicant to predict the exact level of noise or other disturbances that will be emitted by the specific year, make and model of equipment the applicant will employ, perhaps many years later, appears to be an excessive and possibly an impossible burden to establish for any applicant to meet. Conversely, those opposing a quarry application often present evidence on the range and frequency of noise or other disturbances emitted by equipment commonly used in a quarry. We expect such competing presentations of evidence to occur at trial here.

The more complex issue is whether Rivers has satisfied its burden of production relating to the chemicals and explosives it intends to use at the Quarry. Regarding explosives, Rivers "has committed to not using items containing perchlorate", Rivers's Answer to Neighbors' Discovery Question #8, and has asserted that there will not be onsite storage of fuel or blasting materials. While these responses indicate what Rivers will not do at the Quarry, they do not provide guidance on what Rivers will do. In the former Environmental Board[11] Decision in Re: Sherman Hollow Inc., Application #4C0422-5-EB, at 18-20 (Vt. Envtl. Bd., Nov. 9, 1988), the applicants permit was denied because "[g]iven the potential for environmental contamination from pesticides, the Board is especially concerned about the lack of specific information provided by the applicants." However, the Decision in Sherman is factually distinguished from this case because the applicant in Sherman failed to provide any analysis on the type of pesticides to be used, frequency of pesticide applications, quantities of pesticides to be applied,

---

[11] The former Environmental Board, predecessor to the present Land Use Panel of the Vermont Natural Resources Board, was once charged with adjudicating Act 250 appeals. We are directed under 10 V.S.A. § 8504(m) to give the same weight and consideration to the decisions of the former Environmental Board as we do to prior decisions of this Court.

hydrology on the site, soil studies for the site, or the handling and storage of pesticides, thereby preventing the Board from making any type of fact-based determination. Id. at 19, 20. Here, conversely, while Rivers has failed to identify the specific blasting agents and chemicals it intends to use, Rivers has provided evidence regarding the function of the explosives, the handling and storage of explosives, the frequency of blasting, the hydrology, soils and bedrock on the site. We therefore conclude that Rivers has produced some, albeit minimal, "evidence that would allow for positive findings upon [this specific] applicable Act 250 criteri[on]", Route 103 Quarry, Docket No. 205-10-05 Vtec, slip op. at 8, and has presented sufficient evidence on this point to survive Neighbors' pre-trial motion. Whether Rivers satisfies its burden of persuasion remains an issue for trial.

In light of this reasoning, we conclude that Rivers has presented enough evidence here to survive Neighbors' pre-trial motion. In so ruling, we caution that we are not concluding that the evidence presented here will be sufficient at trial to support a conclusion that Rivers has fulfilled either its burden of production or burden of persuasion on this point. We look forward to both parties' presentation of evidence at trial, as to noise and other disturbances.

For all the reasons stated above, we conclude it not appropriate to grant Neighbors summary judgment and therefore allow these disputed issues to be resolved after the taking of all admissible evidence at trial.

## Conclusion

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Cross-Appellant Neighbors' motion for summary judgment is **DENIED**.

Done at Newfane, Vermont, as of this 11th day of January, 2008.

_____
Thomas S. Durkin, Environmental Judge

10