VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org



| Rescue Lake Encroachment Permit | No. 92-8-18 Vtec |
|---|---|

## DECISION ON MOTION

This appeal concerns the Vermont Department of Environmental Conservation's ("DEC") issuance of Lake Encroachment Permit # 2536-LEP ("LEP") to the Vermont Agency of Natural Resources ("ANR" or "Applicant") Department of Fish and Wildlife ("DFW"), authorizing the installation of a floating dock at the DFW Rescue Lake fishing access area located at 22 Fishing Access Road, Ludlow, Vermont. Several individuals owning adjacent property on Rescue Lake ("the Lake"), as well as the Lake Rescue Association ("LRA"), (together "Appellants") timely appealed the permit to this Court. Presently before the Court is ANR's motion in limine to exclude certain evidence from being presented at trial.

### Background

We recite the following facts and procedural history purely for the purpose of deciding the present motion. The following are not specific factual findings with relevance outside of this decision. *See* Blake v. Nationwide Ins. Co., 2006 VT 48, ¶ 21, 180 Vt. 14 (citing Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (mem. op.)).

DEC seeks permission to add a floating dock next to its existing boat ramp at a public access point it manages. The stated purpose for the project is to bring the site into compliance with the Americans with Disabilities Act (ADA); DFW has embarked on a process of making several of its access points around the state ADA-compliant, thereby making such sites more accessible to individuals with certain mobility impairments. This particular public access point is located in a relatively self-contained portion of Rescue Lake known as "Round Pond." Round Pond is connected to the rest of Rescue Lake by a channel between two peninsulas known as "The Narrows." There are

numerous homes with private docks and other private access points to the Lake near the public access point. The Lake is generally popular with boaters and swimmers. The public access point is presently used to launch kayaks and other paddling devices as well as sail and motor boats. Swimming is forbidden at Department of Fish and Wildlife Access areas, but fishing is permitted in accordance with regulations. Public water rules require that boats within 200 feet from shore travel at a speed that does not produce a wake, generally regarded as no more than 5 mph.

DFW requires a shoreline encroachment permit from DEC to authorize construction of this water-bound dock, as an encroachment into public waters. DFW applied for such a permit in January 2018. DEC solicited and received written comments and held a public informational meeting on the proposal. In August 2018, DEC issued a permit for the project, numbered 2536-LEP. Neighbors appealed to this Court. In February 2020 DFW applied for an amendment to Permit 2536-LEP to approve relocation of the proposed floating dock from one side of the boat launch ramp to the other. That amendment was approved as a minor permit amendment by DEC.

On June 9, 2021, we granted ANR's motion for partial summary judgment and motion to clarify. As a result, we dismissed certain of Appellants' Questions in their Amended Statement of Questions and ordered them to clarify others. Among the Questions we dismissed were a question about whether the project constitutes an attractive nuisance and a question about whether the project will lead to damage to adjoining shoreline properties. We concluded both questions exclusively raised issues that lay outside the scope of DEC's initial review and our review in a de novo appeal.

On August 30, the parties filed with the Court a stipulation as to the evidentiary exhibits to be admitted at trial and a preliminary list of fact and expert witnesses they plan to call. The list of stipulated exhibits came with a list of specific objections either party planned to raise thereto, and the following language: "The parties stipulate the following documents into evidence subject *only* to the specific objections noted by the listing." Stipulation of Parties Regarding Evidence and Scheduling at 1 (emphasis added). One of the exhibits listed is a report prepared by the LRA summarizing its members' opposition to the project and issues with the DEC decision. Next to the listing for the LRA report is the following parenthetical: "Note specific language objections of Fish and Wildlife in Objections - these specific objections will be contested by Appellant to the extent noted." Id. The Stipulation went on to list a number of objections to language in the LRA report with pinpoint citations as well as Appellants' indication of which objections they planned to contest. On September 14, 2021, ANR filed this motion in limine.

**Discussion**

ANR seeks through the present motion to exclude the following:

1. On the grounds of relevance: "evidence offered for the purpose of demonstrating facts related to the dock contract, pedestrian activity, attractive nuisance, loitering, noise, littering, trash, picnicking, private property and water rights, motor vehicular traffic on land, and parking," which, it argues, are beyond the scope of the issues DEC and now this Court must consider when deciding whether to grant a shoreline encroachment permit. It included with its motion is a highlighted copy of the LRA Report, demonstrating the portions of the report raising the above issues that it seeks to exclude.

2. A statement in the LRA report, as well as any other testimony regarding mediation the parties attempted, based on the confidentiality of mediation communications.

3. A letter written by Warren Hall and labeled "Waterfront Engineer Analysis", included at pages 28-30 of the LRA report, both as hearsay and, insofar as it purports to be an expert opinion, as lacking the requisite factual or technical foundation.

4. Two letters of Craig Peters included in the LRA report, as hearsay, but only if Mr. Peters does not testify.

Appellants have agreed to exclude any reference to mediation communications and any specific references to an "attractive nuisance." They have further indicated that Mr. Peters will testify at trial, mooting that objection of ANR for the moment. Appellants object to all the other exclusions ANR seeks, both from the LRA report and insofar as ANR seeks to prevent similar evidence from being introduced at trial. Appellants claim that ANR's objections go beyond what it specifically stipulated to in the Parties' August 30 stipulation and that ANR takes too narrow a view of the factors DEC must consider when deciding on a shoreline encroachment permit application. Appellants also argue that the letter from Mr. Hall falls within the business records exception to hearsay. We address each issue in turn.

I.      Objections Beyond The Parties' Stipulation

As an initial matter, Appellants claim that ANR's objections go beyond what ANR specifically stipulated to. We see two instances where this is true: ANR's objections to a reference on page 58 of the LRA report to a pre-contracted dock and to the reference on page 6 to private property rights and private water rights. *Compare* Motion in Limine at 4 with Stipulation Re: Evidence at 4—5. While ANR may not now object to just any portion of the LRA report it wishes in light of the stipulation, both objections parallel objections to similar language at other places in the report. Further, per the Vermont Supreme Court's guidance, we favor "resolving litigation on the merits, to the end that

fairness and justice are served." Desjarlais v. Gilman, 143 Vt. 154, 158–59 (1983). We will therefore decide these requests from ANR on their merits.

II.     Scope of Review

ANR seeks to exclude "evidence offered for the purpose of demonstrating facts related to the dock contract, pedestrian activity…loitering, noise, littering, trash, picnicking, private property and water rights, motor vehicular traffic on land, and parking," which it claims are not relevant to the analysis we must undertake.

When deciding whether to issue a shoreline encroachment permit, DEC must ask how the proposal would affect the public good. This is not a boundless inquiry: DEC must consider how the project, in isolation and in combination with existing shoreline encroachments, will affect "water quality, fish and wildlife habitat, aquatic and shoreline vegetation, navigation, and other recreational and public uses, including fishing and swimming, consistency with the natural surroundings, and consistency with municipal shoreland zoning ordinances or any applicable State plans." 29 V.S.A. 405. We agree with Appellants that such an analysis encompasses both the physical encroachment and the uses expected to be associated with it. *See* In re Champlain Marina, Inc., Dock Expansion, No. 28-2-09 Vtec, Slip op. at 13 (Vt. Super. Ct. Envtl. Div. Jan. 10, 2011) (Durkin, J.) ("We conclude that there will be no adverse effect on water quality attributable to the 177-foot dock extension, its adjoining finger docks, *and the additional sixteen larger boats that will use the new dock slips*.") (emphasis added). Separate from this "public good" analysis, DEC also must determine that the project does not violate the "public trust" interest in the natural resources affected. Id. at 18—20.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." V.R.E. 401. Relevant evidence is generally admissible. V.R.E. 402. As we have previously stated, "All Environmental Division merits hearings are bench trials and, therefore, we are generally liberal in allowing relevant evidence to be admitted…we are unlikely to be 'unduly swayed by a questionable evidentiary offering' as a jury may be." Morrisville Hydroelectric Project Water Quality, 103-9-16 Vtec, Slip op. at 1 (Vt. Super. Ct. Envtl. Div. Mar. 23, 2018) (Walsh, J.) (quoting The Van Sicklen Ltd. P'ship, No. 4C1013R-EB, slip op. at 1 (Vt. Env. Bd. Sep. 28, 2001). However, "once relevant evidence is admitted, we afford it the weight it deserves, if any." Id.

We cannot now definitively say that evidence that the project will enhance or impair "pedestrian activity … loitering, noise, littering, trash, picnicking … motor vehicular traffic on land, and parking" will not be relevant, directly or indirectly, to the public good analysis we must undertake

pursuant to 29 V.S.A. 405. While we may ultimately at trial exclude certain testimony on the above topics, it would be premature to do so here, as to the LRA report or as to testimony generally.

For a slightly different reason, we decline to exclude the identified passages on private property rights or private water rights: We are confused as to what rights exactly Appellants are asserting. If they mean to suggest a right to exclude other users from the public water at a certain distance from their private property, we expect the parties to provide citations to the relevant law in arguments at trial.

We agree, however with ANR that references in the LRA report to a supposed ANR "blanket contract" with Dock Doctors are plainly not relevant to the legal issues before us. These assertions do not attempt to present evidence of any impacts the project will have; rather they seek to impugn DFW's motives in selecting the proposed dock design and/or location. As DFW's motives are irrelevant to our analysis of the effect the project will have on the public good, we grant ANR's motion to exclude such references from the LRA report at trial.

III.     Claimed Hearsay

Lastly, Applicant claims that the report of Warren Hall, located at pages 28-30 of the LRA Report, is impermissible hearsay. Our response is based on our understanding derived from the Appellants' Response to the Motion in Limine that they do not plan to bring forward Mr. Hall as a witness at trial. While the report, as a document, itself may not be hearsay,[1] what it contains most certainly is: The entirety of the letter after the salutation, as well as the attached map, are out-of-court statements offered for the truth of what they assert. V.R.E. 801. Without Mr. Hall as a witness, the foundation for the document's integrity cannot be established nor can the truth of the claims be tested through the adversarial process.

Appellants assert that the claims in the report fall under the business records exception to hearsay. *See* V.R.E. 803(6). In brief, they do not. "Business records," as defined in the Vermont Rules of Evidence and the Federal Rules of Evidence they largely parallel, must be "kept in the course of a regularly conducted business activity," where "it was the regular practice of that business activity

---

[1]     *See* <u>Williamson v. United States</u>, 512 U.S. 594, 599 (1994) ("[W]e must first determine what the Rule means by "statement," which Federal Rule of Evidence 801(a)(1) defines as "an oral or written assertion." One possible meaning, "a report or narrative,", connotes an extended declaration… .Another meaning of "statement," [is] "a single declaration or remark…." Although the text of the Rule does not directly resolve the matter, the principle behind the Rule, so far as it is discernible from the text, points clearly to the narrower reading.") (internal citations omitted).

to make" the records.  Id.  As the Reporter's Notes remind us, the chief concern with hearsay testimony is the inability of the parties or the Court to test the trustworthiness of the declarant and the reliability of their memory, impressions, and opinions.  The hearsay exceptions all present instances where such trustworthiness is deemed guaranteed by alternative methods.  In the case of business records, "trustworthiness is guaranteed by the *regularity and lack of future concern* with which the records are made, the actual reliance placed upon them in human affairs, and the duty of the recorder to make an accurate record." Reporter's Notes to the Vermont Rules of Evidence Rule 803(6).

Quintessential examples of such records are timesheets, invoices, and the like.  In contrast, as a leading treatise on the Federal Rules notes, "When records are prepared in anticipation of litigation, they will often, but not always, demonstrate that lack of trustworthiness." McCormick On Evid. § 288 (8th ed.); *see also* Palmer v. Hoffman, 318 U.S. 109 (1943) ("Unlike payrolls, accounts receivable, accounts payable, bills of lading and the like, [accident] reports are calculated for use essentially in the court, not in the business.  Their primary use is in litigating, not in railroading."); United States v. Feliz, 467 F.3d 227, 234 (2d Cir. 2006) ("[B]ecause Rule 803(6) requires business records to be kept in the regular course of a business activity, records created in anticipation of litigation do not fall within its definition…").

The report from Warren Hall is dated November 1, 2019, or well over a year after this appeal was filed.  It indicates that Mr. Hall reviewed the DEC permit at the request of Appellants Kenneth and Kate Haslam.  The report was clearly prepared for the purposes of contesting that permit and was not kept in the regular course of Mr. Hall's business activity as a regularly conducted activity.  It therefore does not fall within the business records exception and both the contents of the letter and the map must be excluded as hearsay.  We note again that this conclusion is premised on our understanding that Appellants do not plan to produce Mr. Hall to testify; if he does appear as an expert or lay witness, and is therefore subject to examination by the other parties and this Court, there may be other avenues by which to introduce the report into evidence.

### Conclusion

We close by noting one general concern and expectation for trial.  To date, neither party has presented the Court with data showing the likely increase in visitor traffic—both of persons with mobility impairments and of persons without—that may reasonably be attributed to constructing an ADA-accessible dock next to the existing boat ramp at this site.  To a certain extent that is understandable given that projections are inherently speculative to a degree.  However, extrapolation from existing examples of such projects, or other forms of data such as survey results should certainly

be possible to produce. In our previous decision on a proposed dock addition or expansion, we had evidence before us of the expected increase in use associated with said expansion. *See* <u>Champlain Marina,</u> No. 28-2-09 Vtec at 11 (Jan. 10, 2011) (noting the dock expansion was expected to host 16 additional boats, some of which had larger drafts). Such evidence is critical for assessing the impact of such a project on the public good. The original burden to produce such data (and ultimate burden of persuasion) of course lies with Applicant, *see* <u>Id.</u> at 13. However, once Applicant meets that initial burden of production, Appellants will need to provide more than conclusory assertions of negative impacts to rebut any conclusions that may follow.

As to the present motion, it is **GRANTED** insofar as we order Appellants to strike the passages Applicant has noted containing references to a blanket dock contract or "pre-contract" from pages 1 and 58 of the LRA report when they submit that report as an exhibit at trial. The references to an attractive nuisance and to mediation must also be struck, per the parties' agreement. We note Appellants' commitment that Craig Peters will testify as trial, but may revisit the objection to his letters if he does not. Finally, the report from Warren Hall, including both the letter and the map, will be excluded if Mr. Hall does not testify. In all other respects, the motion is **DENIED**.

**SO ORDERED.**

Electronically signed on January 13, 2022, at Newfane, VT pursuant to V.R.E.F. 9(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division

-7-