VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org



Docket No. 23-ENV-00117

| | |
|---|---|
| SM Farms Shop, LLC Permit Appeal | Decision on Motions |

This is an appeal by the Two Rivers-Ottauquechee Regional Commission (TRORC) and Hartland Planning Commission (HPC) (together Appellants) of Land Use Permit #3W1124 issued on September 18, 2023 by the District #3 Environmental Commission (District Commission) to SM Farms Shop, LLC and SMFVTMGT, LLC (together Applicants) for the construction of a 9,000 square foot farm store (the Farm Store) located at 88 U.S. Route 5 in Hartland, Vermont (the Property). Presently before the Court are the Applicants' and Appellants' cross-motions for summary judgment.[1]

In this matter, Appellants are represented by Peter G. Raymond, Esq. Applicants are represented by James P.W. Goss, Esq. The Natural Resources Board (NRB) is represented by Jenny E. Ronis, Esq.

## Legal Standard

To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a), applicable here through V.R.E.C.P. 5(a)(2). When considering cross-motions for summary judgment, the Court considers each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint

---

[1] This matter was originally assigned to Judge Durkin but do to his retirement it has since been assigned to Judge Walsh. While Judge Durkin attended a site visit to the Property and shared his observations with the Court, those observations did not play a role in deciding the pending motions.

Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332. In determining whether there is any dispute over a material fact, "we accept as true allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted); V.R.C.P. 56(c)(1)(A).

### Undisputed Material Facts

We recite the following factual background and procedural history, which we understand to be undisputed unless otherwise noted, based on the record now before us and for the purpose of deciding the pending motion. The following are not specific factual findings relevant outside the scope of this decision on the pending motion. See Blake v. Nationwide Ins. Co., 2006 VT 48, ¶ 21, 180 Vt. 14 (citing Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (mem.)).

1. SM Farms Shop, LLC and SMFVTMGT, LLC (previously defined as Applicants) own a parcel of land off of Route 5, Hartland, Vermont (previously defined as the Property).[2]

2. Applicants have applied for an Act 250 permit to construct a 9,000 square foot farm store (with a 7,500 square foot footprint) with a take-out deli, bakery, eating area, and parking lot (previously defined as the Farm Store) on the Property.

3. The Farm Store is two miles away from Sunnymede Farm, which is owned and operated by the Applicants and is located off Town Farm Hill Road in Hartland, Vermont.

4. Applicants have stipulated to a condition that at least 60–70% of the goods sold at the Farm Store by gross revenue will be produced at or by Sunnymede Farm.

5. The Farm Store will be a two-story structure.

6. The Property is mostly open and wooded. No part of the existing tree line will be cut in connection with the application.

7. The impervious areas of the Farm Store constitute less than an acre of the overall Property.

8. The parking lot will include 46 parking spaces, including handicapped accessible and EV spaces and bike racks, and is connected to the Farm Store via a raised crosswalk.

---

[2] The parties disagree as to the size of the parcel and whether it is 13 or 17 acres. However, we conclude that this dispute is immaterial to our consideration of the pending cross-motions.

9.  The parking lot is located to the side of the main building and runs parallel to U.S. Route 5.

10. The remainder of the Property will either be left undisturbed or will be planted with fruit trees and berry bushes, and contain apiaries, the products of which will also be sold at the Farm Store.

11. The Property has 1450 feet of frontage on U.S. Route 5.  The improved portions of the Farm Store take up 446 feet of that frontage and will be viewable from U.S. Route 5.

12. U.S. Route 5 is a major highway leading from Interstate 91 (I-91) to Woodstock, Quechee, the Killington and Pico ski areas, and other significant areas of central Vermont.  The road is heavily traveled by passenger cars, heavy trucks, and buses.

13. No problematic sight distances, grades, road geometry, or congestion exist on U.S. Route 5 in the area of the Farm Store.

14. No new roads will need to be constructed to accommodate the Farm Store.

15. The Farm Store will be served by an on-site well and wastewater disposal system.

16. The Farm Store also includes a cistern for water for an internal fire sprinkler system.

17. No extension of utilities or expansion of municipal services is required for the Farm Store.

18. The Regional Plan in effect when the Farm Store Act 250 application was deemed complete is the Two Rivers-Ottauquechee Regional Plan adopted on July 15, 2020 (the Regional Plan).

19. The Property is located in the Rural Area as defined by the Regional Plan.

20. The Town of Hartland does not have permanent zoning or subdivision regulations.

21. Hartland has a Town Plan which was adopted on May 17, 2017 (the Town Plan).

22. A small portion of the Property is located in the Hartland Three Corners Village Area (the Village) as defined by the Town Plan, but the Farm Store and all improved areas, including the driveway, are located in the Rural Area as defined by the Town Plan.

23. The only means of travel between the Farm Store and the Village is on U.S. Route 5.

24. Applicants have provided a sidewalk easement along the Property's frontage in the event that the Town of Hartland ever decides to extend sidewalks along Route 5 in the Village and beyond.

3

25. There are no shared roadways, driveways, or parking areas on or adjacent to the Farm Store Property.

26. The Farm Store has received all required non-Act 250 state permits for construction and operation, including a Water Supply and Wastewater Disposal Permit, Public Water Supply Permit, Construction General Permit, Stormwater Discharge Permit, and Wetlands General Permit.

27. On September 18, 2023, the District Commission approved Applicants' application.

28. On October 12, 2023, Appellants appealed the District Commission's decision to this Court.

## Discussion

Appellant TRORC's Statement of Questions poses 8 Questions. They ask generally whether the Act 250 permit for the Farm Store should be denied because the Farm Store fails to satisfy Act 250 Criterion 9(L) because it constitutes strip development and Criterion 10 because it fails to comply with the Regional Plan. Appellant HPC's Statement of Questions adopts TRORC's Questions, but with respect to Criterion 10, it asks whether the Farm Store complies with the Hartland Town Plan. Lastly, Applicants' Statement of Questions contains a single Question which asks whether Criterion 9(L) is void for vagueness. The pending cross-motions move for judgment on all of the Questions before the Court.

### I. Act 250 Criterion 9(L)

Appellants challenge whether the Project complies with Act 250 Criterion 9(L). Criterion 9(L) allows a land use permit to be granted for a project outside of an existing settlement if that development will: (1) make efficient use of land, energy, roads, utilities, and other supporting infrastructure; and (2) will not contribute to a pattern of strip development along public highways. 10 V.S.A. § 6086(a)(9)(L)(i)–(ii). As such, there are three steps to determining whether a project complies with Criterion 9(L). First, the Court must conclude whether a project is within or outside of an existing settlement as defined by 10 V.S.A. § 6001(16)(A). If it is outside, the Court must move to the second and third steps of the analysis, determining whether a project makes efficient use of land and whether it constitutes strip development. 10 V.S.A. § 6086(a)(9)(L)(i)–(ii).

We begin with the first step of the analysis. An existing settlement is either: "(1) a designated center; or (2) an existing center that is compact in form and size, that contains a

4

mixture of uses that include a substantial residential component and that are within walking distance of each other, that has significantly higher densities than densities that occur outside the center, and that is typically served by municipal infrastructure. . ."  10 V.S.A. § 6001(16)(A). Based on this definition, the Farm Store is not located in an existing settlement.

Applicants argue that because the Property is located partially within, and immediately adjacent to, the Village Area as defined as a designated center by the Town Plan, it should be considered part of the existing center of the Hartland Three Corners Village.  We disagree.

The Farm Store and improved areas of the Property lie fully outside of the designated Village Area.  Thus it does not fall within the first definition of "existing settlement" set forth in 10 V.S.A. § 6001(16)(A)(i).  Further, while the area surrounding the Property contains a mixture of uses, those surrounding uses are not compact and are not of a significantly higher density than outlying areas.  Thus, the Property is not within an "existing settlement" as defined by § 6001(16)(A)(ii).  Therefore, we conclude that the Farm Store is not located in an existing settlement.

Accordingly, we turn to step two under the Criterion 9(L) analysis, in which we look at whether the proposed project makes efficient use of land, energy, road, utilities, and other supporting infrastructure.

Based on the undisputed facts presented, we conclude that the Farm Store makes efficient use of land, energy, roads, utilities, and other supporting infrastructure.  The Farm Store will have less than an acre of impervious surfaces, with the rest of the Property being used for agriculture or remaining undeveloped.   The improved areas are clustered together and are located immediately next to U.S. Route 5.  With respect to energy, the Farm Store incorporates various energy efficient appliances and utilities, will utilize high efficiency LED light fixtures, and will provide charging stations for electric vehicles.  Aside from electricity, no new utilities will need to be extended to the Property, and the Farm Store will utilize an on-site water supply and wastewater disposal system.  No new roads will need to be constructed, nor will any extensions or upgrades of roads be required to accommodate the Farm Store.  The Farm Store will not generate undue traffic congestion or unsafe conditions.  Accordingly, we conclude that the Farm Store satisfies the efficient use element of the Criterion 9(L) analysis.

5

We now turn to step three which requires that a proposed project not contribute to a pattern of strip development along public highways.

Strip development is defined in 10 V.S.A. § 6001(36) as:

> [L]inear commercial development along a public highway that includes three or more of the following characteristics: broad road frontage, predominance of single-story buildings, limited reliance on shared highway access, lack of connection to any existing settlement except by highway, lack of connection to surrounding land uses except by highway, lack of coordination with surrounding land uses, and limited accessibility for pedestrians."

Thus, we look to whether the Farm Store includes three or more of the seven listed characteristics of strip development. Beginning with road frontage, the improved portions of the Farm Store take up 446 feet of road frontage on U.S. Route 5. The Criterion 9(L) Guidance Document defines broad road frontage as "buildings or parking lots that extend along the highway, lack depth and have large side setbacks…" Criterion 9(L) Guidance Document at 13. Here, the Project site plan and graphic renderings depict an elongated parking area and Farm Store running parallel to U.S. Route 5. Accordingly, we conclude that the Farm Store exhibits broad road frontage.

The Farm Store is a two-story structure. Therefore, we conclude that the Farm Store will not contain a predominance of single-story buildings.

The Farm Store will not have shared highway access. However, the Farm Store would be the only development along U.S. Route 5 in the vicinity of the Property. Accordingly, while we conclude that the Farm Store does not make use of shared highway access, we do not consider this factor relevant in the context of this current application.[3]

Next, we look at whether the Farm Store lacks connection to existing settlements and surrounding land uses except by highway. NRB Guidance explains that under certain circumstances, these characteristics can be minimized by providing a plan for future pedestrian

---

[3] Should future development occur on the Property that is subject to Act 250 review, that development may be subject to the shared access analysis. However, because the Farm Store is the first, and only, proposed development in this area, it would be inappropriate to deny the Project a permit based on this factor when no highway access currently exists.

and bicycle infrastructure. Criterion 9(L) Guidance Document at 14. U.S. Route 5 is the main artery between the I-91 interchange and the Hartland Three Corners Village, with the Farm Store located a short distance from both areas. Applicants have provided a sidewalk easement to the Town should it wish to expand pedestrian access from the village, and the Farm Store will include bike racks to allow for multimodal transportation options from nearby settlements.

Finally, we look at whether the Farm Store lacks coordination with surrounding land uses and whether it provides limited accessibility for pedestrians. The Farm Store is designed like a barn and is coordinated aesthetically and functionally with the surrounding agricultural uses which are prevalent in the area. The Farm Store site plan depicts raised crosswalks and pedestrian oriented access between the parking area and the store building and is thus accessible for pedestrians.

Taken together, while the Farm Store is not currently connected to an existing settlement except by highway, the Store is located in a convenient area for access, provides opportunities for future pedestrian connectivity, and does not exhibit three or more characteristics of strip development. Accordingly, we conclude that the Farm Store satisfies Criterion 9(L) and therefore **GRANT** summary judgment in favor of Applicants on this issue.

Applicants' sole Question asks that if the Court is inclined to deny the Farm Store a permit under Criterion 9(L), whether that Criterion is void for vagueness because it contains multiple vague, aspirational, and ambiguous terms. Because we conclude that the Project complies with Criterion 9(L), Applicants' sole Question asking whether Criterion 9(L) should be void for vagueness is **MOOT**.

## II.      Act 250 Criterion 10

Act 250 Criterion 10 requires that a proposed project be "in conformance with any duly adopted local or regional plan." 10 V.S.A. § 6086(a)(10). We interpret a duly adopted regional plan the same way we would a zoning ordinance or statute and interpret provisions in the context of the regional plan as a whole, bearing in mind the legislative intent of the drafters. In re B&M Realty, LLC, 2016 VT 114, ¶ 36, 203 Vt. 438 (citation omitted). For a town or regional plan to be enforceable under Criterion 10, the language must be mandatory and not merely aspirational. Zaremba Grp. Act 250 Permit Appeal, No. 36-3-13 Vtec, slip op. at 23 (Vt. Super. Ct. Envtl. Div.

7

Feb. 14, 2014) (Walsh, J.). "Broad policy statements phrased as nonregulatory abstractions are not equivalent to enforceable restrictions." In re B&M Realty, LLC, 2016 VT 114, ¶ 35 (citation omitted). "[P]rovisions that 'recommend' or 'encourage' certain uses are generally insufficient to create an unenforceable obligation. Id. (citation omitted). Rather, "[m]andatory language includes terms like 'must' and 'shall' and it sets forth a requirement rather than a recommendation." Id. With this framework in mind, we turn to the relevant sections in the Regional Plan and Town Plan that the parties ask the Court to interpret with respect to Criterion 10.

### a. Regional Plan

The central dispute between the parties with respect to the Regional Plan is whether the Project should be classified as a Resource-Based Commercial Use (RBCU) or a Principal Retail Use. The Regional Plan defines an RBCU as:

> [c]ertain uses and any associated structures such as sawmills, quarries, and sandpits, outdoor recreation, nurseries, and agricultural product processing that are dependent on resources at the site or coming from rural areas or forest based resource areas and may include retail of products produced on the site.

Ex. 27 (Regional Plan) at 291.

The Regional Plan defines a Principal (Primary) Retail Use as:

> [a] use whose primary use is the supply of merchandise or wares to the end consumer for use off site. Examples include (but are not limited to) supermarkets, hardware stores (without lumber yards), dry goods stores, pharmacies, big box stores, etc. Principal retail does not include on-line sales with no product on site, land consumptive intensive and resource based commercial uses, underlying resource based commercial uses, service business, restaurants, retail as a home occupation, or secondary retail.

Id.

Based on these two definitions, we conclude that the proposed Project is properly classified as an RBCU. The definition of an RBCU specifically includes uses associated with the processing of agricultural products and explains that the use may include retail sales of those products. Moreover, the definition is limited to commercial operations that support working rural lands and the products produced thereon. It is undisputed that the Project will be the retail sale

8

of agricultural products, the majority of which are processed from Applicants' agricultural operations. The Farm Store falls within this definition of an RBCU because it supports the processing and sales of agricultural products produced directly on the Property and at Sunnymede Farm.[4] In contrast, the definition of a Principal Retail Use specifically excludes resource-based commercial uses but lists uses which typically sell merchandise produced off-site. While the Farm Store will sell retail products and other merchandise, the majority of those products will be produced on the Property and at Sunnymede Farm, thus differentiating it from the traditional supermarket or big box store.

This Court previously had the opportunity to consider a similar definition of a Principal Retail Use in B&M Realty Act 250 Application, No. 103-8-13 Vtec (Vt. Super. Ct. Envtl. Div. Nov. 12, 2015)(Walsh, J.). In that case, the application before the Court was for a mixed-use business park consisting of office, retail, restaurant, and residential uses. Id. at 6. The Court concluded that the project's uses did not constitute a principal retail establishment, since less than 40,000 square feet of the overall 115,000 square foot project was to be designated for retail use. Id. at 22. The Vermont Supreme Court later reversed this conclusion and explained that the project clearly included principal retail establishments as that term was intended to be used in the regional plan in order to prevent sprawl and strip development outside of existing or planned settlement areas. In re B&M Realty, LLC, 2016 VT 114, ¶¶ 40-42, 203 Vt. 438.

This present case can be distinguished from B&M Realty for several reasons. Most notably, the scales of the two projects are vastly dissimilar. The total size of the Farm Store is a fraction of the total amount of retail space proposed in B&M. Furthermore, in this instance, we are provided with two relevant use classifications which could conceivably apply to the Farm Store (an RBCU or Principal Retail Use). This was not at issue in B&M Realty. Our consideration of these

---

[4] While not binding on this Court in the context of Criterion 10, Applicants point to various statements within the Regional Plan to suggest that the Farm Store is precisely the type of use which should be allowed in this location. For example, the Regional Plan states that: "[f]arm innovation and diversification is essential to sustaining our working landscape. Instabilities in traditional markets . . . mean that farmers need to embrace broader ways to utilize their farms and sell their products, such as direct-to-consumer sales. . . ." Regional Plan at 114. Further, the Plan explains that "[p]lanning and regulatory review at the state and local levels should not unduly restrict the development of such commercial operations, which complement farming and forestry." Id. at 119. These isolated examples reflect an overall policy within the Regional Plan to encourage agricultural entrepreneurship and diverse commercial uses involving agricultural products.

two applicable definitions led us to review various provisions in the Regional Plan which we find demonstrate a clear support agricultural commercial uses, such as direct to consumer sales. The Farm Store sells products which are produced directly on the Property and at the nearby Sunnymede Farm, and the building itself is designed to fit with the rural and agricultural surroundings. In reviewing these two definitions and the Regional Plan as a whole, we conclude that the Farm Store is an RBCU and is therefore an allowable use in the Rural Area as designated by the Regional Plan. Thus, we conclude that the Farm Store complies with the Regional Plan.

### b. Town Plan

With respect to the Town Plan, Appellants argue that only residential uses are permissible in the Rural Area as designated by the Town Plan. Specifically, Appellants point to a provision which states that:

> Maintaining the Town's natural resource base, agricultural economy, and forest industry are primary objectives of the Town Plan to be implemented through the Rural Area. In these areas, only low density residential development with home occupations will meet these objectives.

Town Plan at 19.

Appellants argue that this language creates a mandatory and binding prohibition against the Farm Store. In response, Applicants argue that this provision is contradictory and ambiguous and that there is no other regulatory provision in the Town Plan upon which to deny the Project. We disagree with both parties, and instead conclude that the language in this provision does not create a mandatory requirement. In reaching this conclusion, we note the absence of language such as "must" or "shall" which are indicative of a mandatory and binding requirement. Rather, the provision uses the term "objectives" which indicates that this provision is merely aspirational. Thus, it's terms are not regulatory in the Criterion 10 context.

Because Appellants point to no other provision in the Town or Regional Plans which would create an enforceable regulatory prohibition against the Farm Store, we conclude that the Store complies with Criterion 10 and **GRANT** summary judgment to Applicants on this issue.

### Conclusion

For the foregoing reasons, we conclude that the material facts are not in dispute such that Applicants are entitled to judgment as a matter of law with respect to Act 250 Criterion 9(L) and

10.  The Farm Store makes efficient use of land, energy, roads, and other infrastructure without contributing to a pattern of strip development.  Furthermore, the Farm Store is properly classified as a Resource Based Commercial Use and there are no provisions within the Town or Regional plans upon which to deny the project.  Accordingly, we **GRANT** Applicants' motion for summary judgment and **DENY** Appellants' motion.

This concludes the matter before the Court.  A Judgment Order accompanies this Decision. Electronically signed July 9, 2024 pursuant to V.R.E.F. 9(D).

Thomas G. Walsh, Judge
Superior Court, Environmental Division